EL PUEBLO DE PUERTO RICO, demandante y apelante, *v.* JUAN CANALS, acusado y apelado.

No. 5630.—*Sometido:* Mayo 8, 1935. *Resuelto:* Julio 1, 1935.

R. A. *Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelante; *E. Pérez Casalduc,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El día 8 de mayo último se llamó esta apelación para la vista de una moción de desestimación presentada en abril 26, 1935, y para la del caso en su fondo que había sido seña-lada desde abril 17, 1935. Ambas partes comparecieron e informaron oralmente por medio de sus respectivos abogados.

Sostiene el acusado en su moción de desestimación que la apelación no procede porque la orden recurrida no es apelable ya que por ella no se desestima la acusación.

Archivada ésta fué excepcionada por el acusado porque los hechos en ella alegados no eran constitutivos de delito, porque se imputaba en ella más de un delito y porque no se ajustaba a los artículos 71 y 75 del Código de Enjuiciamiento Criminal.

Resolviendo las excepciones la corte de distrito decidió que en el párrafo primero de la acusación se imputaba un delito de abuso de confianza; que en el segundo no se imputaba tal delito, pudiendo quizá constituir los hechos imputados una infracción a la sección 17 de la Ley No. 18 de 1923 ((2) pág. 83) reglamentando los Bancos y las operaciones bancarias en Puerto Rico, siendo en todo caso la acusación defectuosa por imputar más de un delito. Concedió al fiscal cinco días "para presentar una nueva acusación enmendada que no sea incompatible con los méritos de esta resolución."

¿Qué alcance tiene esa resolución? Habiendo el fiscal optado por no enmendar, sosteniendo su acusación en la

forma en que la presentara, tiene el alcance de una sentencia definitiva de acuerdo con el artículo 157 del Código de Enjuiciamiento Criminal que dispone que: "Si se admitiere la excepción, esto constituirá sentencia definitiva respecto a la acusación impugnada . . .", teniendo en su consecuencia El Pueblo el derecho de apelar según los términos expresos del artículo 348 del propio Código, a saber: "Una apelación puede ser interpuesta por El Pueblo . . . 2. De una sentencia a favor del acusado en virtud de excepción perentoria puesta a la acusación . . ."

A virtud de la disposición terminante del artículo 157 citado, no es necesario en el procedimiento criminal como en el civil el registro formal de la sentencia.

Examinando la jurisprudencia hemos encontrado el caso de *People* v. *Lee,* 107 Cal. 477, 40 Pac. 754, que sostiene a nuestro juicio la conclusión a que acabamos de llegar basándonos en los hechos y la ley. En dicho caso la Corte Suprema de California interpretando un estatuto igual al nuestro, dijo y resolvió lo que sigue:

"Se trata de una apelación entablada por El Pueblo contra una resolución declarando con lugar una excepción previa a la acusación y ordenando que se sometiera la causa a otro Gran Jurado. El apelado solicita la desestimación del recurso y es ésta la primera cuestión que debemos considerar. El apelado sostiene que habiendo la corte ordenado que la causa fuese sometida a otro Gran Jurado, en la creencia de que el defecto hallado en la acusación era subsanable (Código Penal, artículo 1008) el derecho de El Pueblo a apelar no existe. La autoridad en que se basa es el caso de El Pueblo v. Wooster, 16 Cal. 435. Pero este caso es enteramente distinto al presente, según se verá claramente al hacerse constar que en el primero el fiscal no anotó excepción alguna a la resolución de la corte que declaró con lugar la excepción, mientras que en el presente lo hizo. Código Penal, artículo 1172. En el caso de Wooster el fiscal solicitó y obtuvo de la corte una resolución sometiendo la causa a otro Gran Jurado; en el presente no solicitó tal orden, y excepcionó la dictada por la corte *motu proprio.* En el caso de El Pueblo v. Wooster la corte dijo: 'El haberse dejado de excepcionar y el dictarse la orden debe ser considerado como un allanamiento a la sentencia y como una

renuncia al derecho de apelación.' Las circunstancias arriba enunciadas indican claramente la ausencia de una renuncia y la inaplicabilidad de esa decisión. Mas aparte de todo esto, resolvemos que el derecho de El Pueblo a apelar no puede perderse mediante una orden de la corte, hecha *motu proprio*, decretando la sumisión de la causa a otro Gran Jurado. El derecho de apelación está garantizado al Pueblo por el artículo 1238 del Código Penal, y es un derecho importante. Cuando el fiscal de distrito admite que existe un defecto en su apelación, él puede aprovecharse de la oportunidad ofrecida por la resolución disponiendo que la causa sea sometida a un nuevo Gran Jurado, y negarse a apelar. Pero en aquellos casos en que él está satisfecho con la forma de la acusación, o cuando los hechos no permiten que se redacte una acusación distinta, él tiene derecho, en representación de El Pueblo, en insistir en su suficiencia y hacer que el asunto sea resuelto por la corte de apelaciones. Si a virtud de su resolución decretando que la causa sea sometida nuevamente, la corte, sentenciadora podía privarle de este derecho, el resultado sería que se le obligaría a acudir a la corte con la misma acusación, la que una vez más sería archivada y ello tendría por resultado que al acusado nunca se le sometería a juicio, y al Pueblo, teniendo derecho a apelar, nunca se le permitiría que esta corte considerara una alegación que a su juicio era legalmente suficiente. Por tanto, debe declararse sin lugar la moción para desestimar.''

La moción de desestimación debe, pues, declararse sin lugar. Procederemos al estudio del recurso en sus méritos.

█ █ La acusación de que se trata, dice:

''El fiscal formula acusación contra Juan Canals, por el delito de Abuso de Confianza (*felony*) cometido de la manera siguiente:

''El referido acusado, Juan Canals, durante el período comprendido entre el 19 de enero y el 22 de diciembre del año 1931, y en Arecibo, P. R., que forma parte del distrito judicial del mismo nombre, mientras ocupaba el cargo de Director-Cajero de la Sucursal de Arecibo del Banco Territorial y Agrícola de Puerto Rico—que es una corporación bancaria organizada de acuerdo con las leyes de Puerto Rico, con su oficina central en San Juan, P. R.—y siendo, como tal Director-Cajero, administrador de dicha sucursal y depositario y encargado de todos los caudales, valores, documentos, libros de contabilidad y dinero en efectivo pertenecientes a la misma, confiados a su custodia, ilegal, voluntaria, maliciosa y fraudulentamente, sin el conocimiento ni consentimiento de su oficina central, distrajo y empleó

en su propia utilidad y beneficio y para fines ajenos al debido y legítimo cumplimiento de su encargo como tal Director-Cajero, la suma de $1,184.57, que retiró de los fondos bajo su custodia y se apropió, haciendo aparecer, por medio de simulaciones y asientos falsos en el libro de contabilidad de la Sección de Ahorros de la sucursal a su cargo, que dicha suma había sido retirada con fecha mayo 4 de 1931, de su cuenta de ahorros (Libreta No. 2313) por Pablo López, lo cual no era cierto e hizo el acusado sin el conocimiento ni consentimiento del mencionado Pablo López, a quien tuvo el Banco Territorial y Agrícola de Puerto Rico que acreditar nuevamente la referida suma de $1,184.57 en su cuenta de ahorros con fecha 8 de febrero de 1932.

''Alega también el fiscal que el aquí acusado, Juan Canals, actuando en todo momento en su carácter de Director-Cajero de la Sucursal de Arecibo del Banco Territorial y Agrícola de Puerto Rico, allá para los meses de septiembre, octubre, noviembre y diciembre de 1931, ilegal, voluntaria, maliciosa y fraudulentamente, abusando de las facultades concedídasle y de la confianza en él depositada por su superior, el Banco Territorial y Agrícola de Puerto Rico—de cuya oficina central tenía el acusado, Juan Canals, como Director-Cajero de la Sucursal de Arecibo, orden expresa y terminante de no autorizar sobregiros en cuentas corrientes sino 'sólo por cantidades limitadas y muy ocasionales, debiendo ser cubiertos por los sobregiradores dentro del menor espacio de tiempo posible,' y de rendir a dicha oficina central, diariamente, un informe detallado de todos los sobregiros en cuenta corriente en la sucursal a su cargo y la cuantía de cada uno de ellos—distrajo y empleó para fines ajenos al debido y legítimo cumplimiento de su encargo como tal Director-Cajero la suma de $8,282.83, de los fondos confiados a su custodia, lo que hizo el acusado al autorizar y permitir el pago de cheques librados contra la cuenta corriente de J. B. Rodríguez, de Isabela, P. R., con la Sucursal de Arecibo del Banco Territorial y Agrícola de Puerto Rico, sin tener dicha cuenta fondo alguno, lo que ocasionó un sobregiro (autorizado por el Director-Cajero, Juan Canals, aquí acusado) por la mencionada suma de $8,282.83 en la antes referida cuenta corriente de J. B. Rodríguez, de Isabela, P. R., cuyo sobregiro ocultó en todo momento el acusado de los investigadores del banco y no incluyó nunca en sus informes diarios de sobregiros en cuenta corriente a su oficina central, según la orden que tenía al efecto, que arriba se menciona.

''Alega, además, el fiscal que la suma de $9,467.40, importe de la suma de $1,184.57 a que se refiere la primera parte de esta acusación y de la de $8,282.83 a que se refiere la otra parte, o sea el

párrafo anterior, fué reembolsada al Banco Territorial y Agrícola de Puerto Rico, por giro a favor de dicho banco librado con fecha agosto 25, 1932 bajo el No. 2182 y que fué cobrado por dicho banco en septiembre 7, 1932, por The Fidelity & Deposit Company of Maryland —corporación organizada de acuerdo con las leyes del estado de Maryland, E.U.A., debidamente registrada y autorizada en Puerto Rico para hacer negocios de seguros, y la que, mediante póliza No. 3020 (Bond No. 2434227) a favor del Banco Territorial y Agrícola de Puerto Rico, suscrita el 15 de noviembre de 1930, se había constituído fiadora del acusado en este caso, Juan Canals obligándose a pagar a dicha corporación bancaria, como patrono, hasta la suma de $15,000.00 como indemnización por concepto de 'such pecuniary loss as the Employer shall sustain of money or other personal property (including that for which the Employer is responsible) through the Fraud, Dishonesty, Forgery, Theft, Embezzlement, Wrongful Abstraction, Misapplication or Misappropriation or any other Dishonest or Criminal Act or Omission' en que incurriera el acusado, Juan Canals, en el desempeño de su antes mencionado cargo de Director-Cajero de la Sucursal de Arecibo, quedando en esta forma defraudada la mencionada corporación, The Fidelity & Deposit Company of Maryland (cuyo agente legal y autorizado en Puerto Rico es el Sr. Herman L. Cochran, con oficina en San Juan, P. R.) en la antes mencionada suma de $9,467.40, a consecuencia de los actos ilegales y fraudulentos realizados por el acusado, Juan Canals.''

El párrafo primero imputa claramente al acusado la comisión de un delito de abuso de confianza. Sobre ello no hay cuestión. ¿Lo imputa el segundo? Veámoslo.

El título XVII de nuestro Código Penal trata de los ''Delitos contra la Propiedad.'' Su capítulo IV está destinado al ''Abuso de Confianza'' que comienza definiéndolo en el artículo 445 como ''la fraudulenta sustracción o malversación de bienes por una persona a quien habían sido confiados.'' ''*Fraudulent appropriation*'' dice el original inglés.

Seguidamente el artículo 446 expresa que ''todo funcionario de Puerto Rico . . . o cualquier funcionario, director, depositario, secretario, escribiente, sirviente, apoderado, o agente de alguna asociación, compañía o corporación pública o privada, que fraudulentamente distrajere o empleare cualesquiera caudales confiados a su custodia para fines distin-

tos de los correspondientes a su debida y legítima adminis-
tración, . . . será culpable de abuso de confianza.'' ''Ap-
propriáte to any use or purpose not in the due and lawful
execution of his trust,'' dice el original inglés.

Continúan los artículos 447 a 450 estableciendo las otras
formas en que puede cometerse el delito y los 451 al 455
fijando reglas relativas al mismo.

En el caso de *El Pueblo* v. *Calderón,* 18 D.P.R. 584, 587,
dijo esta corte:

''Para que se entienda perpetrado el delito de abuso de confianza,
se necesita comprobar la existencia de los siguientes elementos: 1.
Una propiedad determinada, materia del delito; 2. Que tal propie-
dad se confió a otra persona en alguna de las formas especificadas
en los artículos 446 al 450 del Código Penal, y 3. Que esa otra per-
sona se apropió de ella fraudulentamente.''

Sobre la concurrencia de los dos primeros elementos no
hay cuestión; es sobre el tercero, o sea sobre si hubo o no
apropiación por parte del acusado de los fondos del banco
confiados a su custodia, que la cuestión se levanta.

Resumiendo la jurisprudencia dice Corpus Juris:

''Para que una apropiación constituya el delito de abuso de con-
fianza, el dueño de la cosa debe ser privado de su propiedad o dinero
mediante una tenencia o uso adversos; . . . Los medios utilizados
para la fraudulenta apropiación carecen de importancia. Ésta puede
tener lugar mediante el ejercicio del derecho de propiedad en pugna
con los derechos del dueño y con la naturaleza y fines de la enco-
mienda. Para que haya una apropiación de dinero o bienes que
constituya un caso de abuso de confianza, no es necesario que el acu-
sado se apropie de los bienes en beneficio propio, sino que será igual-
mente culpable si se apropia fraudulentamente de los bienes en be-
neficio de un tercero.'' 20 C. J. 426, 427.

Como puede verse, dadas las circunstancias que pone de
manifiesto la acusación, aunque hay que reconocer que se
trata de un caso extremo, podría sostenerse quizá que el acto
que se imputa al acusado ál disponer del dinero del Banco
confiado a su custodia en la forma en que lo hizo, constituye
una apropiación del mismo dentro del espíritu del artículo

446 del Código Penal. Pero no tendremos que decidir de modo definitivo este punto porque el Pueblo apelante sostiene que la acusación se basa en la sección 17 de la Ley No. 18 de 1923 reglamentando los bancos y las operaciones bancarias en Puerto Rico, que lee como sigue:

"Sección 17.—Todo presidente, director, oficial, cajero, oficinista, empleado o agente de un banco o banco extranjero que cometiere abuso de confianza, sustrajere o intencionalmente hiciere indebida aplicación de dinero, fondos o créditos del banco o existentes en el mismo; o que, sin estar debidamente autorizado, emitiere o expidiere algún certificado de depósito, librase alguna orden o letra de cambio, hiciere alguna aceptación, traspasare algún pagaré, bono, giro, letra de cambio, hipoteca, sentencia o decreto; o que hiciere alguna entrada falsa en cualquier libro, informe o estado del banco o banco extranjero, con la intención, en cualquiera de esos casos, de perjudicar o defraudar al banco, o a cualquiera otra compañía, persona o corporación jurídica, o a cualquier persona individual, o de engañar a cualquier oficial del banco, o a cualquier agente nombrado para examinar los asuntos de cualquier banco o banco extranjero; y toda persona que con análoga intención ayude o permita a cualquier oficial, agente o empleado a cometer cualquiera infracción de esta sección será considerada culpable de delito grave (*felony*) y será reducida a prisión por no menos de uno ni más de diez años." Código de Comercio, ed. 1932, p. 406.

Ésa es en verdad la ley vigente, y, por tanto, a su luz debe estudiarse y resolverse la cuestión planteada.

En el caso de *Cliff* v. *People,* de Colorado, 269 Pac. 907, 909, se dice:

"Se sostiene que la acusación se fundaba en el artículo 6734 de los Estatutos Revisados (Ley de 1907); que ese artículo, en lo que a banqueros se refiere, fué derogado implícitamente por la ley de 1913 (C. L. 2675). Esta objeción fué suscitada primeramente por moción para que se archivara la acusación, y repetida varias veces durante y después del juicio. La ley de 1907 se refiere al delito de hurto mediante abuso de confianza. Es un estatuto general sobre la materia. La ley de 1913 es un estatuto especial en relación tan sólo con los bancos y entidades bancarias. Según esta ley la malversación de fondos por parte de un banquero constituye un delito grave irrespectivamente de la suma malversada (C. L. 2740); mientras que

bajo la ley de 1907 la magnitud del delito depende de la suma apropiada (C. L. 6734, 6719 y 6738). La pena máxima de acuerdo con la ley de 1913 es reclusión en la penitenciaría por el término de veinte años y multa de dos mil dólares (C. L. 2740); mientras que según la ley de 1907 la pena máxima que puede ser impuesta es reclusión en la penitenciaría por el término de diez años. Fué claramente la intención de la legislatura retirar de los ámbitos de la ley anterior y general el delito de malversación cometido por banqueros y colocarlo en una clase especial de por sí. Siendo ello así, se colige que en lo que a banqueros se refiere, la ley de 1913 sustituye y tácitamente deroga la de 1907.''

Que los hechos imputados al acusado en el primer párrafo de la acusación constituyen un delito de abuso de confianza tanto de acuerdo con el Código Penal como con la Ley de Bancos, es incuestionable, pero es dudoso que los que se le imputan en el párrafo segundo constituyan tal delito de acuerdo con una u otra ley, ya que al señalar por su nombre la Ley de Bancos el abuso de confianza debe entenderse que se refiere al que reúne todos los elementos que el Código Penal exige.

Ahora bien, dejando a un lado el abuso de confianza, aceptando que la calificación de abuso de confianza que la acusación contiene es errónea, creemos que no hay duda de que los hechos imputados tanto en el primero como en el segundo párrafo de la acusación constituyen intencionales aplicaciones indebidas de los fondos del Banco Territorial y Agrícola confiados al acusado como Director-Cajero de la Sucursal de dicho banco en Arecibo, previstas y castigadas en la sección 17 de la Ley de Bancos.

■■ Y como lo substancial no es el nombre que se dé al delito, sino los hechos imputados (*Pueblo* v. *Rodríguez,* 46 D.P.R. 542), partiremos de la base de que lo que en realidad se imputa al acusado es el delito de *"felony"* a que se refiere la repetida sección 17 de la Ley de Bancos a los efectos de estudiar y resolver la cuestión de duplicidad envuelta.

Sabido es que el Código Penal prescribe en su artículo 77

que la acusación habrá de comprender sólo un delito, pero también estatuye que el mismo delito puede ser expuesto en diferentes formas y bajo distintos cargos, y cuando el delito haya sido cometido usando de medios diversos, los medios pueden ser alegados alternativamente en el mismo cargo.

Es cierto que en la acusación se imputan dos actos realizados por el acusado, pero es lo cierto también que los dos se le imputan como indebidas aplicaciones intencionales de los fondos confiados a su custodia constitutivas de un solo delito.

Se trata de una ofensa que si bien no es de naturaleza continua, ya que cada aplicación intencional indebida constituye una violación que puede ser castigada como un delito, puede a nuestro juicio, perseguirse cometida en serie, como en el caso del abuso de confianza. *El Pueblo* v. *Pérez,* 47 D.P.R. 765, 783.

El acusado no se perjudica. Se le informa desde un principio con toda exactitud de los actos que se le imputan y así puede prepararse para su defensa mejor que si dichos actos se aportaran luego en el juicio como prueba a los únicos efectos de demostrar su intención criminal, algo que es permisible hacer. *El Pueblo* v. *Juarbe,* 43 D.P.R. 448; *El Pueblo* v. *Pérez,* 47 D.P.R. 765, 788.

Claro está que aunque todas las indebidas aplicaciones intencionales se imputen, no es necesario probarlas todas para obtener una convicción, pero una vez imputadas, es claro también que si el acusado fuera absuelto, no podría volvérsele a perseguir por ninguna de ellas.

En tal virtud, no solicitándose por el Ministerio Público sino una convicción, y no pudiendo obtenerse más que una, puede concluirse que sólo se imputa al acusado un delito, el de la aplicación intencional indebida de los fondos del banco confiados a su custodia con la intención fraudulenta y por medio de los diferentes actos que en la acusación se especifican y que integran su actuación delictuosa.

Debe, en tal virtud, declararse con lugar el recurso,

*revocarse la resolución apelada y dictarse otra declarando sin lugar las excepciones,* con permiso al fiscal para enmendar la acusación sustituyendo el nombre de abuso de confianza dado al delito por el de infracción a la sección 17 de la Ley No. 18 de 1923 reglamentando los bancos y las operaciones bancarias en Puerto Rico.