EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
MIGUEL SANTIAGO NÚÑEZ, acusado y apelante.

Número 16289.

*Sometido:* 5 de mayo de 1958. *Resuelto:* 19 de mayo de 1958.

*Santiago Polanco Abréu,* abogado del apelante; *Hon. Secretario
de Justicia J. B. Fernández Badillo, Arturo Estrella, Secre-
tario Auxiliar de Justicia, Alfredo Archilla Guenard* y
*William Fred Santiago, Fiscal* y *Fiscal Auxiliar del Tribunal
Supremo,* respectivamente, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del
Tribunal.

Miguel Santiago Núñez fué acusado ante el Tribunal
Superior, Sala de Aguadilla, de haber infringido el art. 8
de la Ley de Armas (25 L.P.R.A. sec. 418). También fué
acusado por el delito de robo (art. 238 del Código Penal,
ed. 1937, 33 L.P.R.A. sec. 851). Habiendo renunciado a su
derecho a juicio por jurado en ambos casos, éstos se vieron
conjuntamente ante tribunal de derecho por la misma
prueba, según la estipulación que hicieron las partes. Re-
sultó absuelto en el caso de robo, pero fué hallado culpable
en el de portación de armas y más tarde sentenciado a una

pena indeterminada de uno a dos años de presidio con trabajos forzados. En este recurso alega los siguientes errores: (1) "el tribunal inferior cometió grave y manifiesto error al apreciar el conjunto de la prueba practicada y evidencia ofrecida"; (2) "el tribunal inferior cometió grave y manifiesto error de derecho al declarar NO CULPABLE al acusado en el caso criminal G-56–25 (robo), y CULPABLE en el presente caso"; (3) "el tribunal inferior cometió grave y manifiesto error al condenar al acusado por un delito que no está sostenido por la evidencia ofrecida ni por la prueba practicada."

 El apelante discute conjuntamente los tres errores apuntados porque tienen una base común, a saber, que la prueba del ministerio público no es clara y convincente como se exige cuando el arma no se presenta en evidencia por no haber sido capturada. Véanse: *Pueblo* v. *Oquendo*, 79 D.P.R. 542, 546 (1956); *Pueblo* v. *Pacheco*, 78 D.P.R. 24, 29 (1955); *Pueblo* v. *Garcés*, 78 D.P.R. 102, 107 (1955); *Pueblo* v. *Rupizá*, 72 D.P.R. 744, 746 (1951); *Pueblo* v. *Guzmán*, 52 D.P.R. 458, 459 (1938); *Pueblo* v. *Cartagena*, 37 D.P.R. 281, 284 (1927). En efecto, la única argumentación que presentó en su alegato el apelante, después de citar algunos trozos de las declaraciones de los testigos de cargo, es la siguiente:

"Como puede observarse, el arma no fué ocupada. Cuando el arma no es ocupada, su descripción debe ser clara, que despeje toda duda en el ánimo del juzgador. Cuando el arma no es ocupada, la prueba del Ministerio Público debe ser clara y convincente. Véase *Pueblo* v. *Rupizá*, 72 D.P.R. 744. Aceptamos que el arma no tiene que ser ocupada y ofrecida en evidencia. Véase *Pueblo* v. *Julián*, 18 D.P.R. 940; *Pueblo* v. *Blanco*, 68 D.P.R. 932; *Pueblo* v. *De Jesús*, 65 D.P.R. 932 y *Pueblo* v. *Nieves*, 35 D.P.R. 53. Se ha sostenido, no obstante, que el arma debe haberse identificado debidamente. Véase *Pueblo* v. *Blanco*, 68 D.P.R. 932 y *Pueblo* v. *Blanco*, 77 D.P.R. 767.

"En este caso específico que nos ocupa, la prueba revela como una identificación o descripción del arma que era un rifle 'creo

que 22' (pág. 6, T. E.). Como una cuestión de honradez intelectual, tenemos que aceptar que los testigos Rodríguez Alers revelan que oyeron disparos y que como consecuencia de esos disparos fué muerto un gallo. Nótese, sin embargo, que el ilustre Magistrado del tribunal sentenciador absuelve libremente al acusado al darle el beneficio de la duda. Dicho en otras palabras, el Magistrado no quedó satisfecho y, por el contrario, tuvo dudas en cuanto a la culpabilidad del acusado en el caso de robo, delito principal del cual se acusaba al apelante. Si hubo dudas en cuanto al delito mayor, nos parece que debió haberla habido en cuanto al delito menor. Admitimos que el Magistrado no dió explicación, salvo el comentario de 'dándole el beneficio de la duda al acusado' (pág. 33, T. E.), al pronunciar la sentencia en el delito de robo, pero a nuestro juicio, la mera expresión de duda, revela una insatisfacción del Magistrado sentenciador en cuanto a suficiencia de la evidencia o credibilidad a los testigos.

"No debemos cerrar este corto alegato, sin expresar que la cuestión esencial que está en controversia es determinar la suficiencia de la evidencia y, especialmente, el grado de identificación que se hiciera del arma. Honestamente confesamos que si este Hon. Tribunal entiende que el arma fué debidamente identificada, procedería la confirmación de la sentencia. Sin embargo, hemos querido descargar nuestra responsabilidad trayendo este caso ante vuestra consideración, por entender que la evidencia aportada por el Ministerio Público no es suficiente en derecho para condenar al acusado.

"SÚPLICA

"POR LO ANTERIORMENTE EXPUESTO, suplicamos muy respetuosamente de este Hon. Tribunal que revoque la sentencia dictada en este caso por el tribunal a quo y absuelva libremente al acusado."

Creemos que la cuestión así suscitada es frívola. En primer lugar, la prueba del ministerio público demostró fuera de dudas (1) que el acusado portaba el día de los hechos un arma prohibida; (2) que dicha arma estaba cargada; y (3) que con ella hizo cuatro disparos. Además, en forma clara y convincente, dicha prueba sostiene la conclusión de que se trataba de un rifle "de balines", calibre 22.

Y por supuesto, el hecho de que el juez sentenciador absolviera al acusado del delito de robo, al "... darle el beneficio de la duda ..." en cuanto a si se robó el gallo que mató con el rifle, no tiene absolutamente nada que ver con su culpabilidad en el caso por el delito de portar armas prohibidas. Veamos en sus partes pertinentes las declaraciones de los testigos de cargo Ramón Rodríguez Alers y Pascual Rodríguez Alers, quienes manifestaron:

*Ramón Rodríguez Alers:*

" . . . . . . . . .

"P.—¿Usted, testigo, conoce a Miguel Santiago Núñez?

"R.—Sí, señor.

"P.—¿Lo ve usted aquí en el tribunal a él?

"R.—Sí, señor.

"P.—¿Dónde está él?

"R.—Mírelo ahí sentado.

"P.—El testigo señala al acusado. Dígame: ¿el día 30 de diciembre de 1955, alrededor de la una de la tarde, dónde se encontraba usted?

"R.—Yo me encontraba ese día desyerbando unas habichuelas.

"P.—¿Dónde?

"R.—En lo mío, en el patio mío, en mi terreno.

" . . . . . . .

"P.—Dígame: ¿mientras usted se encontraba desyerbando esas habichuelas en el patio de su casa qué sucedió allí, si sucedió algo?

"R.—Sucedió.

"P.—¿Qué pasó allí? Explíquele al señor Juez lo que pasó allí.

"R.—Pasó que él pasó. ...

"P.—¿Quién es él?

"R.—Miguel.

"P.—¿Este acusado?

"R.—Sí, señor.

"P.—¿Qué hizo este señor allí, si hizo algo?

"R.—Él pasó los alambres.

"P.—¿Los alambres de qué?

"R.—De la parcela mía.

"P.—¿Los pasó en qué dirección?

"R.—En la dirección que venía; él venía bajando de la playa para acá y entonces pasó a la propiedad mía.

"P.—¿Cuando usted dice 'pasó a la propiedad mía' quiere decir usted que entró a la propiedad suya?

"R.—Sí, señor.

"P.—¿Y qué hizo allí, si hizo algo?

"R.—Al entrar a la propiedad mía cogió el rifle y le apuntó al gallo.

"P.—¿Le apuntó a qué?

"R.—Al gallo.

"P.—¿Cómo era ese gallo?

"R.—El gallo era un gallo color pinto rubio que pesaría como dos y cuarta, una cosa así.

"P.—¿Propiedad de quién era ese gallo?

"R.—Propiedad mía, de Ramón Rodríguez Alers.

"P.—¿O sea suyo?

"R.—Sí, señor; en eso él me dijo 'lo mato' y yo le dije 'no lo mates'; yo le dije tres veces 'no lo mates' pero él siempre haló por el rifle y lo mató.

"P.—¿Qué le dijo él a usted cuando usted le dijo que no lo matara?

"R.—Él me dijo que mataba al gallo y me mataba a mí.

"P.—¿Le dijo él para qué quería matar el gallo?

"R.—Él no me dijo para qué quería matar el gallo.

"P.—¿Y a pesar de que usted le dijo que el gallo era suyo y que no lo matara él siempre lo mató?

"R.—Sí, señor.

"P.—¿A qué distancia estaba usted de él cuando él le dijo esas palabras a usted de que mataba el gallo y lo mataba a usted?

"R.—Él estaba a una distancia como de 30 ó 40 pies de retirado.

"P.—¿Y qué tenía él en las manos cuando decía esas palabras?

"R.—Pues él tenía un rifle.

"P.—¿Un rifle de qué clase?

"R.—Un rifle calibre creo que 22.

"P.—¿O sea, un rifle de balines?

"R.—Sí, señor.

"P.—¿Entonces, cuando él le dijo que mataba el gallo y lo mataba a usted qué hizo él, si hizo algo?

"R.—Bueno, él lo mató; mató el gallo.

"P.—¿Entonces al matar el gallo él disparó con el rifle?

"R.—Sí, señor.

"P.—¿Cuántos disparos hizo él, si usted lo sabe?

"R.—Cuatro disparos, y con el último disparo lo mató; no llegó a los cinco disparos.

" . . . . . . ."

A preguntas de la defensa declaró:

"P.—¿Usted notó si Miguel demostraba haber tomado ron?

"R.—Bueno, no había tomado ron.

"P.—¿Por qué lo sabe usted?

"R.—Porque yo a este muchacho según yo lo ví allí no le hice fuerza porque si yo le hago fuerza quizás me mata a mí; como él entró a lo mío y él nunca había hecho eso. . . . .

"P.—Yo lo que le pregunto es si él estaba embriagado.

"R.—Estaba embriagado.

"P.—¿Y él acostumbraba bromear con usted?

"R.—Cómo no.

"P.—¿Se daban bromas ustedes?

"R.—Sí, señor.

"P.—¿Se daban bromas y charlas?

"R.—Sí, señor.

"P.—¿El uno y el otro?

"R.—Sí, señor.

"P.—¿Usted metido en fiesta y él metido en fiesta se daban bromas?

"R.—Sí, señor.

"P.—¿Esa era la verdad?

"R.—Sí, señor.

"P.—¿Y ese día él llegó al lado suyo y le dijo 'a que te mato aquel gallo'?

"R.—Sí, señor.

"P.—¿Eso lo dijo así él?

"R.—Sí, señor.

"P.—¿En esa forma?

"R.—Sí, señor.

"P.—¿Y cuando le dijo a usted 'Ramón, a que te mato ese gallo' sacó por un rifle que usted dice que él tenía y disparó y mató el gallo?

"R.—Sí, señor.

" . . . . . . . .

"P.—¿Entonces, cuando usted le dice a él 'no me mates el gallo' él le dice 'sí, que te lo mato'; usted le vuelve a decir 'no me lo mates' y entonces él le dijo 'sí, que te lo mato' y sacó el rifle y le tiró?

"R.—Sí, señor.

"P.—¿Y no le hizo nada?

"R.—No, señor; con el primer disparo no le hizo nada.

"P.—¿Y después le tiró más tiros?

"R.—Sí, señor.

"P.—¿Y lo mató?

"R.—Sí, señor.

"P.—¿Entonces qué hace él?

"R.—Él después que mató el gallo enganchó el rifle y se fué.

" . . . . . . . ."

*Pascual Rodríguez Alers:*

" . . . . . . . .

"P.—¿Usted conoce a Miguel Santiago Núñez?

"R.—Sí, señor.

"P.—¿El día 30 de diciembre de 1955, entre doce y una de la tarde, dónde estaba usted?

"R.—Yo me encontraba en mi casa.

"P.—¿En casa de quién?

"R.—De la madre mía.

"P.—¿Usted qué queda de Ramón Rodríguez Alers?

"R.—Hermano.

"P.—¿Ustedes viven en el mismo sitio?

"R.—No, señor; yo vivo aparte.

"P.—¿Ramón vive en el sitio en que usted estaba ese día?

"R.—Sí, señor.

"P.—¿Usted recuerda haber visto en casa de Ramón Rodríguez Alers a este acusado ese día?

"R.—Sí, señor.

"P.—¿A la hora indicada?

"R.—Sí, señor.

"P.—Explíquele al tribunal qué hizo él allí, si hizo algo.

"R.—Ese día a que se refieren los hechos yo me encontraba en casa y entonces oí unos disparos y salí hacia afuera y ví .a Miguel con un rifle disparándole a un gallo.

"P.—¿Qué le pasó al gallo?

"R.—Que él lo mató."

Además el ministerio público presentó en evidencia cuatro casquillos de balas de rifle, calibre 22, que fueron encontrados en el sitio de los hechos el día 30 de diciembre de 1955 por el policía Benito Vega, quien compareció como testigo de cargo y los identificó debidamente.

Con esa prueba el fiscal sometió su caso y después de un receso, sin presentar prueba alguna, la defensa expresó lo siguiente: *"Señor Juez: anunciamos a Vuestro Honor que sometemos el caso."* (Bastardillas nuestras.)

Para que la prueba sea clara y convincente, las declaraciones de los testigos que merecen crédito al juez sentenciador no tienen que describir el arma con la precisión de un militar o de un experto en armas de fuego. Así lo indicamos en *Pueblo v. Guzmán*, 52 D.P.R. 458, 460 (1937). Basta que los testigos puedan conocer lo que es un rifle, sobre todo si el acusado en presencia de los testigos hace cuatro disparos con dicha arma, como sucedió en el caso de autos. En *Pueblo v. Rupizá*, 72 D.P.R. 744 (1951), los testigos presentados por el Pueblo dijeron de manera terminante que vieron al acusado portando un revólver, pero no pudieron indicar la diferencia existente entre un revólver y una pistola, ni el color de sus chapas o el calibre del mismo. Sin embargo, allí resolvimos que ese hecho " . . . no era óbice para que la portación ilegal del arma quedara demostrada . . .", aplicando la regla de que la prueba del ministerio público debe ser clara y convincente. Véase además *Pueblo v: Garcés*, 78 D.P.R. 102, 108 (1955). Por otro lado, no hay base alguna en los autos para alterar la apreciación de la prueba de cargo que hizo el juez sentenciador, sobre todo en vista de que la defensa sometió el caso sin presentar prueba. *Pueblo v. Aquino*, 79 D.P.R. 18 (1956); *Pueblo v. Piñeiro*, 77 D.P.R. 531 (1954); *Pueblo v. Comas*, 75 D.P.R. 413 (1953); *Pueblo v. Millán*, 71 D.P.R. 440 (1950).

Hemos creído conveniente escribir una larga opinión en este caso por los mismos motivos que expresamos en el caso

de *Pueblo* v. *Rosario*, resuelto en el día de hoy. Mientras sigan llegando ante nos innumerables apelaciones frívolas en casos criminales y en casos civiles, el problema de la congestión del calendario en el Tribunal Supremo es en verdad insoluble.

*La sentencia apelada será confirmada.*

El Juez Asociado Sr. Serrano Geyls no intervino.