EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
LIBRADO SEDA ÁLVAREZ C/P LIBRA, acusado y apelante.

Números 17009 al 17027.

*Sometidos:* 9 de mayo de 1961. *Resueltos:* 23 de mayo de 1961.

*Raúl Ramos Torres* y *Yamil Galib Frangié,* abogados del apelante; *J. B. Fernández Badillo, Procurador General de Puerto Rico* y *Jorge Segarra Olivero, Procurador General Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 18 de diciembre de 1959 el Fiscal Agustín Mangual Hernández formuló diecinueve acusaciones contra el apelante Librado Seda Alvarez, por alegadas infracciones a la Ley Núm. 220 de 15 de mayo de 1948 (Leyes, pág. 739, 33 L.P.R.A. sec. 1247 et seq.) consistentes en que "vendió el número 935 y los (sic) apuntó en una lista de números de tres cifras seguidos de guión y otro número a la derecha, la cual lista la tenía el acusado en su poder y/o posesión y para usarse dichos números para los juegos ilegales de 'Bolita', 'Boli-Pool', combinaciones relacionadas con los 'Pools' y bancas de los hipódromos de Puerto Rico y loterías clandestinas." Después de varios incidentes preliminares,(¹) se celebró el juicio el día 13 de mayo de 1960.

---

(¹) La lectura de las acusaciones tuvo lugar el día 1 de febrero de 1960, y durante la misma el acusado solicitó término para alegar, lo cual le fue concedido. En 23 de febrero presentó una moción escrita solicitando la desestimación y archivo de las acusaciones, y como fundamento adujo varios motivos que serán objeto de consideración en la presente opinión. Excepción perentoria fue interpuesta en 8 de abril, alegándose que 1) la acusación no informaba al acusado, en lenguaje conciso, corriente y claro, los actos delictivos que se le imputaban, 2) la acusación pretendía imputar más de un delito público en un solo cargo; y 3) los hechos alegados no eran constitutivos de delito. En 14 de abril siguiente se declaró sin lugar la excepción perentoria, y el acusado hizo alegación de inocencia. Solicitó juicio por jurado, y le fue denegado. En 25 de abril, el acusado presentó

En el acto de la vista se estipuló que el testimonio del agente encubierto Héctor M. Calero sería idéntico a la exposición de los hechos que aparece en las declaraciones juradas que éste prestó ante el Fiscal Luis A. Limeres, y que sirvieron de base para la radicación de las acusaciones, y que se recibiría como prueba sujeto a la objeción de la defensa de que se trata de evidencia secundaria, porque "se habla aquí de unos números y de unas listas en las cuales se apuntaban esos números, sin que se hayan traído las listas al tribunal" (T.E., pág. 27). Se aceptó además que las gestiones efectuadas por el agente fueron realizadas sin que mediase una orden de allanamiento u orden de arresto que le facultase a penetrar en la morada del acusado. El acusado no presentó prueba alguna. Con excepción de la fecha a que se refiere la infracción,([2]) la parte pertinente de las declaraciones juradas del agente Calero, es como sigue:

"Que me consta de propio conocimiento porque lo he visto y le he jugado en distintas ocasiones, que LIBRADO SEDA C/P LIBRA, se dedica a vender, cobrar, llevar sobre su persona, manipular y guardar material relacionado con el juego ilegal de la bolita, en violación a la Ley Núm. 220 de mayo 15 de 1948.

"Que el día 12 de septiembre de 1959, como a las 2:30 P.M., y en su residencia en la Calle Angel Franco Núm. 26, Cabo Rojo,

---

una moción sobre especificación de particulares e inspección de documentos, que fue declarada con lugar. En cumplimiento de esta resolución, el Fiscal entregó al acusado copia de la declaración jurada prestada por el agente Héctor M. Calero, que sirvió de base a las acusaciones. En 12 de mayo, el acusado presentó una moción sobre supresión de evidencia y absolución perentoria, que fue declarada sin lugar el día del juicio. Puede afirmarse que los planteamientos hechos por el acusado en estos incidentes preliminares constituyen los fundamentos principales en que descansa en su recurso de apelación.

([2]) La fecha de la primera infracción es 9 de mayo de 1959 y la última en 12 de septiembre del mismo año, o sea, a razón de una infracción semanal. Deseamos hacer constar que en dos ocasiones—11 de julio y 15 de agosto de 1959—las transacciones de venta se efectuaron fuera de la residencia del acusado, o sea, en el Colmado Álvarez, sito en la calle Betances núm. 15 de Cabo Rojo. Es claro que en cuanto a estas acusaciones la alegación de que medió un allanamiento ilegal es improcedente. *Pueblo v. López*, 77 D.P.R. 529 (1954).

Puerto Rico, le jugué al querellado el número 935 con la cantidad de $1.00 para el juego ilegal de la bolita. Que el querellado apuntó dicho número en un pedazo de papel de tienda a donde tenía apuntados otros números de tres cifras seguidos de guión y otras cantidades a la derecha, todos dichos números para el juego ilegal de la bolita. Que el querellado no me dio dicho número apuntado, por lo cual no presento evidencia física en este caso.

"Que yo tengo un servicio confidencial asignado. Visto de paisano en todo momento en forma tal que puedo confundirme con las personas del sitio donde presto servicio y las instrucciones que tengo son de no arrestar cuando se viole la ley en mi presencia y sí, conseguir evidencia contra el mayor número de personas y luego someter la misma a la consideración de un magistrado."

El Tribunal Superior, Sala de Mayagüez, declaró convicto al acusado de diecinueve infracciones a la ley mencionada, y le impuso una sentencia de seis meses de cárcel en cada caso, para ser cumplida concurrentemente. Sec. 5 de la Ley Núm. 108 de 12 de mayo de 1943 (Leyes, pág. 305, 34 L.P.R.A. sec. 1035).

## I

El acusado señala como primer error la negativa del tribunal *a quo* a desestimar las acusaciones por *a*) contravenir las disposiciones del artículo 3 del Código de Enjuiciamiento Criminal; *b*) privársele del derecho a un juicio rápido y del debido procedimiento de ley.

La disposición mencionada del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 3) dispone que todo delito deberá proseguirse en virtud de acusación presentada por el fiscal y confirmada con su declaración jurada, "que será suficiente si en ella se expresa que la acusación se funda en las declaraciones de testigos *juramentados por él* o las declaraciones de testigos examinados ante un juez instructor". Arguye que, como las declaraciones del agente Calero fueron juradas ante el Fiscal Luis A. Limeres, y la acusación fue jurada por el

724

Fiscal Mangual, procedía su desestimación por infringirse el artículo citado. No le asiste la razón.

Como es sabido, nuestro Código de Enjuiciamiento Criminal procede del de California. En dicho estado, sin embargo, el proceso criminal se inicia mediante acusación escrita presentada por el gran jurado (indictment) o por el fiscal de distrito (information). Código Penal de California, secs. 682 y 737, 29 West's Annotated Codes of California, págs. 5 y 55. En este último caso, la radicación de la acusación está precedida por una vista preliminar ante un magistrado. Secs. 739 y 872, 49 West's, op. cit., págs. 56 y 185. Ahora bien, como en Puerto Rico el sistema de acusación por gran jurado no fue adoptado hasta 1919 y sólo para casos especiales en que el fiscal se abstenía de procesar funcionarios públicos,(³) ni tampoco se incorporaron las disposiciones relativas a la vista preliminar, (⁴) el legislador aparentemente requirió que la acusación por el fiscal se fundase en declaraciones juradas, para ofrecer así una garantía mayor respecto al sistema acusatorio. A nuestro juicio, lo que es realmente importante es que la acusación se base en declaraciones juradas, pero no es requisito indispensable que las declaraciones se juramenten ante el mismo fiscal que a su vez presenta y jura la acusación *Pueblo* v. *Pagán*, 49 D.P.R. 436 (1936); *Pueblo* v. *Rodríguez*, 62 D.P.R. 778 (1944).

(³) Ley Núm. 58 de 18 de junio de 1919 (Leyes, pág. 303), según enmendada por las Leyes Núm. 98 de 28 de agosto de 1925, pág. 789 y Núm. 21 de 9 de julio de 1936, pág. 157. (34 L.P.R.A. sec. 521 et seq.) Véanse, *Pueblo* v. *Pabón*, 36 D.P.R. 97 (1926); *Pueblo* v. *Ramos*, 36 D.P.R. 821 (1927); *Pueblo* v. *Cardona*, 50 D.P.R. 108 (1936). En las Reglas de Procedimiento Criminal sometidas a la Asamblea Legislativa se omitió la Regla 100(*b*) propuesta por el Comité de Procedimiento Criminal de la Conferencia Judicial, relativa al gran jurado. Véase el Informe del Comité del Gobernador de Derechos Civiles, (Ed. Colegio de Abogados de Puerto Rico, 1959, pág. 186).

(⁴) La Regla 34 de las de Procedimiento Criminal adoptadas por el Tribunal Supremo y remitidas a la Asamblea Legislativa *dispone que la acusación se firmará y se jurará por el fiscal y que el juramento será suficiente si expresare que la acusación se basa en causa probable determinada después de la celebración de una vista preliminar.*

Cf. *Pueblo* v. *Ortiz*, 76 D.P.R. 257 (1954). La pretensión del apelante descansa exclusivamente en una interpretación literal y forzada del texto legal, que nos vemos obligados a rechazar por conducir a un resultado que no puede haber sido el que se intentó por el legislador. Como acertadamente sugiere el Procurador General en su alegato presentado ante este Tribunal, "el fiscal" en dicho artículo se refiere al concepto genérico de "representante del ministerio público".[5]

■ El segundo fundamento aducido fue resuelto adversamente al apelante en *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 455 (1959), en donde claramente dijimos, después de efectuar un examen cuidadoso sobre la materia, que "el punto de partida para computar los sesenta días (se refiere al artículo 448 del Código de Enjuiciamiento Criminal) tiene que ser el acto de un tercero, anterior a la presentación de la acusación, *conocido por la persona afectada* y que tenga el efecto legal de obligar a esa persona a responder por la comisión de un delito público" (a la pág. 459). Ratificamos nuevamente que el arresto o detención de la persona por la comisión de un delito público señala la fecha desde la cual comienza a contar el término de 60 días, y no desde la fecha de la ocurrencia del hecho denunciado. *Pueblo* v. *Albino*, 38 D.P.R. 215, 218 (1928). Esta situación no varía por la disposición contenida en la sección 4 de la Ley Núm. 220 de 1948, supra, al efecto de que "toda persona que vendiere (listas de números o letras, boletos o implementos que pudieren usarse en el juego de bolita) ... incurrirá en delito público y será arrestada inmediatamente, dándose traslado del caso sin

---

[5] Esta situación en nada la altera el hecho de que a partir de la vigencia de la Constitución, se privara a los fiscales de la facultad para expedir órdenes de arresto, fijar y aprobar fianzas y expedir autos de encarcelación (artículo II, sec. 10). Dichos funcionarios, si bien dejan de ser magistrados (arts. 12 y 13 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. secs. 12 y 13), conservan su facultad para investigar y tomar declaraciones bajo juramento. El caso de *Pueblo* v. *Rodríguez*, 62 D.P.R. 778 (1944) debe entenderse aclarado a este respecto, y considerarse a la luz de las disposiciones de ley entonces vigentes.

demora al fiscal con jurisdicción, quien formulará la correspondiente acusación . . ." La doctrina que pretende establecer el acusado apelante a base del lenguaje citado del estatuto tiene más fuerza gramatical, que legal. Ya en *Pueblo* v. *Tribunal Superior*, supra, a la pág. 470, habíamos anticipado los casos en que podía justificarse cierta demora en la radicación de la acusación y específicamente aludimos a la necesidad de posponer el arresto o detención para no malograr una investigación en escala mayor sobre actividades clandestinas tales como ventas de bebidas, narcóticos, y *'bolita'* . . ." Como expresa el agente en su declaración, su gestión comprendía "un servicio confidencial" con instrucciones expresas de no arrestar aunque se incurra en una violación flagrante de la ley, con el propósito de lograr obtener evidencia contra el mayor número de personas. Por otro lado, no puede decirse que el término transcurrido entre la fecha de la primera infracción—9 de mayo de 1959—y la radicación de la acusación—18 de diciembre de 1959—haya colocado al apelante en una posición de indefensión[6] o que haya creado un clima de opinión pública antagónico, o que haya turbado su tranquilidad por medio de un acosamiento o de una investigación afrentosa. *Pueblo* v. *Tribunal Superior*, supra, a la pág. 471. Y, ciertamente, desde el punto de vista de la pena impuesta, no le causó un perjuicio indebido, ya que las sentencias han de cumplirse concurrentemente.

## II

■ Un ligero examen de la acusación radicada en el presente caso es suficiente para convencer a cualquier persona de que el delito imputado es una infracción a la sección 4 de la Ley 220 de 1948 (33 L.P.R.A. sec. 1250), supra, que

---

[6] No se ha demostrado que la omisión de radicar inmediatamente la acusación haya privado al acusado de presentar testigos en su defensa, o que obedeciera a un plan deliberado para lograr que las sentencias que le fueran impuestas se cumplieran en forma consecutiva y no concurrente. Véanse al respecto los casos citados en el escolio 16 de la opinión en *Pueblo* v. *Tribunal Superior*, supra.

castiga la posesión y venta de material de bolita. No vemos como los hechos alegados en cada acusación puedan interpretarse, como sugiere el acusado, de violaciones de la sección 8 (33 L.P.R.A. sec. 1254). La primera castiga la posesión, venta y transportación de material que pudiera usarse en el juego ilegal de la bolita y es un delito menos grave, a menos que se trate de un delito subsiguiente; la otra sección presenta tres modalidades (1) ayudar en cualquier forma o influir para que se exonere o no se persiga, arreste o inculpe por infracción a la Ley de Bolita; (2) tener interés—directa o indirectamente en dicho juego prohibido; y (3) negarse a perseguir a cualquier infractor de la misma, *Rivera* v. *González*, 71 D.P.R. 668, 670 (1950), y constituye un delito grave. Es aparente que el delito definido en esta sección 8 está dirigido a evitar la colaboración de los agentes encargados de la administración de la ley con los infractores de la misma, especialmente con los llamados banqueros, para condonar o coadyuvar en la violación de la ley.

■ Es cierto que en la acusación no se indicó la sección específica por cuya violación se procesa. Sin embargo, lo que tiene relevancia es que los hechos imputados sean suficientes para permitir la identificación del delito por el cual se acusa y la disposición de ley infringida. *Pueblo* v. *Bermúdez*, 75 D.P.R. 760 (1954); *Pueblo* v. *Conroig*, 60 D.P.R. 168 (1942); *Pueblo* v. *Canals*, 48 D.P.R. 794 (1935). Además en caso de que el acusado hubiese tenido alguna duda, la misma tiene que haberse disipado al entregársele copia de la declaración jurada del agente en cumplimiento de la resolución sobre especificación de particulares, ya que los hechos allí expuestos complementan los alegados en la acusación. Aunque no es decisivo, las acusaciones fueron radicadas bajo la sigla M, índice que comunmente se usa para identificar los casos "misdemeanors". Además, la negativa del tribunal de instancia a concederle juicio por jurado, confirma plenamente

728

que se trataba de una infracción menos grave. (⁷) Así·también parece admitirlo el propio acusado al discutir el sexto error que señala sobre la necesidad de corroboración de la declaración del agente, como supuesto cómplice en la transacción de venta de material de bolita.

### III

 Sostiene el acusado apelante que su residencia fue invadida ilegalmente, sin orden de allanamiento, por el agente Calero, y que por tanto la declaración de éste sobre lo que allí vio y observó, era inadmisible y procedía ordenar su supresión al así solicitarse oportunamente. Sobre este particular es preciso recordar que según aparece de la declaración jurada mencionada, el agente estuvo en *diecisiete* ocasiones en la casa del acusado y le jugó un dólar al mismo número 935; que el acusado apuntó el número y la cantidad apostada en un pedazo de papel en donde tenía apuntados otros números de tres cifras seguidos de guión y otras cantidades a la derecha.

Aunque no vemos realmente como pueda invocarse el derecho contra *registros* ilegales en el presente caso bajo los únicos hechos que tuvo ante sí el tribunal sentenciador,. o sea los que aparecen de la declaración jurada del agente encubierto, tal derecho es renunciable. *United States* v. *Martin,* 176 F.Supp. 262 (S.D. N.Y. 1959) ; *Zap* v. *United States,* 328 U.S. 624 (1946) ; *United States* v. *Dornblut,* 261 F.2d 949 (2 Cir., 1958) ; Petroshius, *Constitutional Immunity from Unreasonable Search and Seizure—Waiver of such Immunity,* 15 Notre Dame Law 252 (1940) ; *Unreasonable Searches and Seizures—Voluntary Character of Consent,* 21 Tul. L. Rev. 313 (1946) ; Cantey, *The Law of Search and Seizure* (1957), págs. 18–19. Esta renuncia se deduce del acto del acusado

---

(⁷) La discusión de este segundo error nos dispensa de la consideración del tercer error apuntado al· efecto de que el tribunal de instancia erró al negarle al acusado el derecho a juicio por jurado. Tratándose de un delito menos grave, ello era claramente improcedente.

de permitir la entrada del agente, o cuando se puede establecer que hubo una invitación implícita de su parte. *On Lee* v. *United States,* 343 U.S. 747, 751 (1952) ; *People* v. *Jacquish,* 338 P.2d 974 (Cal. 1959) ; Cf. *Silverman* v. *United States,* 365 U.S. 505 (resuelto en 6 de marzo de 1961). Algunos de los factores a considerar para determinar si en efecto medió una invitación expresa o tácita son: 1) si ha mediado fuerza o violencia, *Judd* v. *United States,* 190 F.2d 649, 651 (D.C. 1951) ; *United States* v. *Gross,* 137 F.Supp. 244 (1956) ; 2) si se efectuó el registro después de practicado un arresto, *United States* v. *Reckis,* 119 F. Supp. 687 (Mass. 1954) ; y 3) si se encontraban otras personas presentes, *United States* v. *McCunn,* 40 F.2d 295 (S.D. N.Y. 1930) ; *United States* v. *Martin,* supra.

No vemos como pueda eludirse la conclusión de que en el presente caso el agente, quien no se identificó como tal ni empleó fuerza o violencia para entrar a la casa del acusado, estuviese allí en diecisiete ocasiones a jugar el mismo número, a menos que fuera porque el acusado así lo consintió. La conducta del apelante revela claramente que medió una invitación implícita para que el agente Calero fuera a su hogar a colocar las apuestas ilegales por las cuales ha sido procesado.

*State* v. *Smith,* 87 S.E.2d 593 (N.C. 1955) presenta un cuadro de hechos similares a los que aquí consideramos. Un agente encubierto estuvo en dos ocasiones en el hogar del acusado. Fue admitido después de haber tocado a la puerta. Solicitó que se le vendieran unos tragos de licor, a lo que accedió el acusado sin reparos. Ante una impugnación por el fundamento de que se había violado el derecho constitucional del acusado contra registros ilegales, ya que el agente había penetrado en la morada de éste sin estar provisto de una orden de allanamiento, se dijo: "En el presente caso el agente tocó a la puerta y fue admitido. No entró a la morada a registrar o arrestar. Fue a comprar whisky, que el acusado diligente-

mente le vendió. El hecho de que luego prestara declaración sobre lo que él presenció o compró no convierte su entrada en ilegal. Una entrada por invitación y sin el empleo de violencia no es ilegal por el hecho de que luego se le relate al tribunal y al jurado. Por supuesto, el señor Smith no indicó que fuese un agente. Pero el acusado tampoco lo preguntó. Todo cuanto hizo el agente fue comprar whisky y tomárselo— el acusado hizo el resto." En *Padilla* v. *State*, 273 S.W.2d 889 (Tex. 1954) se dijo que el hecho de que el agente hubiese consumado una compra de whisky en la casa del acusado indicaba que había sido invitado a entrar allí.

No hay duda de que el agente encubierto es un arma de investigación que es necesario utilizar en ciertos delitos, que por su característica esencial de clandestinidad, permanecerían impunes si no se contara con este método. Todo cuanto se requiere es que la actuación del agente no incite o induzca la intención criminal en la mente del acusado, aunque facilite la comisión del delito. *Pueblo* v. *Pérez*, 80 D.P.R. 300 (1958); *Cook* v. *United States*, 193 F.2d 373 (D.C. 1951); *Sorrells* v. *United States*, 287 U.S. 435 (1932); *United States* v. *Sherman*, 200 F.2d 880 (2 C.C.A. 1952); cf. *United States* v. *Masciale*, 236 F.2d 601 (2 C.C.A. 1956); *Entrapment to commit offense with respect to gambling or lotteries*, 31 A.L.R.2d 1212 (1953). En forma tímida, el apelante parece insinuar que el agente sembró en su mente la intención criminal para que cometiera el delito y luego arrestarle (*entrapment*). Los hechos no justifican tal conclusión, y más bien, considerada la asiduidad de las infracciones, demuestran que el acusado era un colector regular de apuestas para el juego ilegal de bolita.(8)

---

(8) En relación con la defensa de "entrapment", sus modalidades, aplicación y limitaciones, véanse: Donnelly: *Judicial Control of Informants*, 60 Yale L.J. 1091 (1951); Williams: *Entrapment—A Legal Limitation on Police Techniques*, 48 J. Crim. L., C. & P.S. 343 (1957); Turets: *Entrapment*, 18 U. Pitt. L. Rev. 667 (1957); Getman: *Entrapment*, 6 Buffalo L. Rev. 348 (1957); 70 Harv. L. Rev. 1302 (1957).

## IV

 El apelante sostiene que el tribunal erró al admitir, por sobre la objeción del acusado, prueba secundaria o inferior, ya que la mejor evidencia no era la declaración del agente que participó en la operación de venta, sino los boletos vendidos o las listas con los números jugados. A los fines de establecer el delito, todo cuanto viene obligado a probar el fiscal es que se efectuó una venta, y para ello, la declaración del agente es suficiente. Por otro lado, el testimonio de éste no está dirigido a probar el contenido específico de las listas o boletos, sino meramente que en la transacción estuvo envuelta una lista o boleto de los que se usan comunmente en el juego de bolita. Hemos rechazado impugnaciones similares en convicciones por violaciones a la Ley de Armas (*Pueblo* v. *Rosario*, 80 D.P.R. 318 (1958) ; *Pueblo* v. *Santiago*, 80 D.P.R. 310 (1958) ; *Pueblo* v. *Oquendo*, 79 D.P.R. 542 (1956) ; *Pueblo* v. *Garcés*, 78 D.P.R. 102 (1955)) y a la Ley de Bebidas (*Pueblo* v. *Santiago*), 60 D.P.R. 821 (1942). Además, según se indica por el Procurador General, de la declaración del agente Calero aparece que el acusado no le entregó lista o boleto alguno, sino que se limitó a apuntar el número y conservó el "pedazo de papel de tienda a (sic) donde tenía apuntados otros números de tres cifras seguidos de guión". Aun cuando fuere aplicable la regla de la mejor evidencia, el fiscal hubiese estado justificado en recurrir a la declaración del agente, ya que no podía obligarse al acusado a entregar cualquier prueba documental incriminatoria que tuviera en su poder. *Heartsill* v. *State*, 341 P.2d 625 (Okla. 1959) ; *Commonwealth* v. *Montanero*, 96 A.2d 178 (Pa. 1953) ; *Admissibility of secondary evidence of incriminatory document in possession of defandant*, 67 A.L.R. 77 (1930).

## V

Alega finalmente el acusado que el tribunal *a quo* incurrió en error *A)* al no desestimar la acusación en vista

de que como el agente no tenía la intención de apostar, no se perfeccionó la venta, y no se cometió delito alguno; *B*) al resolver que la declaración del agente era suficiente para condenar, aun en ausencia de corroboración; y, *C*) al estimar que no era necesario presentar prueba "material" de la transacción de venta.

*A*) En *State* v. *Del Bianco*, 78 A.2d 519 (N.H. 1951) un agente encubierto colocó una apuesta clandestina en relación con el orden de llegada de varias carreras a celebrarse en un hipódromo. El acusado alegó que como el agente no tenía intención genuina de apostar, no hubo acuerdo de voluntades (meeting of the minds), y, por tanto, no podía acusársele de delito alguno. Al rechazar tal alegación, el tribunal indicó que aunque era cierto que el propósito del agente era exclusivamente obtener evidencia y no colocar una apuesta, esta intención—desconocida por el acusado—no le impidió aceptar la jugada. No es necesario que ambas personas tengan una intención criminal, y basta con que la persona que acepta la apuesta tenga tal intención, expresa o implícita. Véase, *State* v. *Stolberg*, 2 S.W.2d 618 (Mo. 1928); *People* v. *Lindsey*, 205 P.2d 1114 (Cal. 1949); *State* v. *Roybal*, 337 P.2d 406 (N.M. 1959).

*B*) La alegación de que, al participar en una transacción de venta de bolita, el agente encubierto se convierte en un cómplice, cuya declaración necesita ser corroborada, es claramente frívola. *Pueblo* v. *Cardona*, 57 D.P.R. 695 (1940). Es suficiente decir que en la actuación del agente hay ausencia completa de intención criminal. Wharton, *Criminal Evidence*, sec. 452; cf. *Pueblo* v. *Pérez*, 43 D.P.R. 796 (1932); *Forastieri* v. *Calzada, Alcaide*, 53 D.P.R. 251 (1938); *Pueblo* v. *Montalvo*, 58 D.P.R. 315 (1941).

*C*) Finalmente, respecto al planteamiento de que a los fines de una convicción bajo la sección 4 de la Ley de Bolita es necesario presentar prueba "material" de la transacción de venta, no merece seria consideración bajo las cir-

cunstancias que rodean este caso. El estatuto que castiga la venta de bolita se dirige a remediar un mal social que corroe principalmente la economía de nuestras clases obreras. Pretender que a los fines de establecer el delito sea necesario producir *en todos los casos* evidencia documental, consistente en el boleto o en listas de números, es dejar abierto un amplio camino por donde fácilmente se escaparían los infractores. Esa no puede haber sido la intención legislativa. Ahora bien, si esa evidencia está disponible, o puede obtenerse sin grandes dificultades, debe ser presentada, o cuando menos, la omisión de hacerlo, debe ser explicada en forma satisfactoria. En el presente caso, la omisión de presentar la prueba "material" se justificó plenamente. Por otro lado, el acusado no presentó prueba alguna, y prefirió descansar en las cuestiones de derecho planteadas, obviando con su actuación cualquier ejercicio por el tribunal sentenciador de su función de apreciar la evidencia. Convenimos en que en los casos en que no se presenta la prueba a que se refiere el acusado, el tribunal debe ser muy cauteloso en la apreciación, y debe exigir que se demuestre cumplidamente, como se hizo aquí, que no fue posible obtener dicha prueba, a pesar de desplegarse la debida diligencia.

*No habiéndose cometido ninguno de los errores señalados, se confirmará la sentencia dictada por el Tribunal Superior, Sala de Mayagüez, en 16 de mayo de 1960.*