EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ SOTO ZARAGOZA y CARLOS PALACIO AMADOR, acusados y apelantes.

*Número:* CR-65-96     *Resuelto:* 24 de abril de 1967

*Rafael L. Ydrach Yordán* y *Gerardo Méndez Correa,* abogados de los apelantes; *J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En *Pueblo* v. *Ayala Ruiz*, 93 D.PR. 704 (1966), expresamos nuestra preocupación por la forma en que se instrumentaban por la policía las investigaciones en que intervenían agentes encubiertos, y alertamos sobre la necesidad de mejorar el método de investigación para evitar que la ciudadanía pierda la confianza en la justicia y derive la impresión de que se sanciona el encausamiento de determinadas personas a quienes se tiene reputadas como inveterados infractores de la ley (*crime by reputation*). [1]

■ Reafirmamos ahora que existe la necesidad de actividad encubierta para la persecución de ciertos delitos, como la bolita, el tráfico de drogas y las bancas clandestinas. En la esfera federal, tan recientemente como el 12 de diciembre de 1966, se enunció igual criterio en *Lewis* v. *United States*, 385 U.S. 323, pero como acertadamente allí se apunta "las circunstancias particulares de cada caso gobiernan la admisión de evidencia obtenida mediante el ardid o el engaño". Es precisamente esta área la que pretendemos explorar en nuestros pronunciamientos en *Pueblo* v. *Ayala Ruiz*, supra, y en la presente opinión, conscientes de que no es posible señalar una serie de normas fijas e inalterables para cubrir todas las situaciones.

■ La experiencia del Distrito de Columbia nos ayuda a colocar el problema en la perspectiva apropiada. La preocupación de los tribunales federales coincide con la nuestra

---

[1] Informes dados a la publicidad por la Policía Estatal tienden a corroborar la existencia de la práctica de fichar a ciertas personas. En la edición del diario EL MUNDO del día 8 de junio de 1966, pág. 11, se hace referencia a que "De acuerdo con un estudio hecho por la Uniformada, en Puerto Rico, existen actualmente 5,664 personas envueltas en el juego de la Bolita y sus operaciones cubren 68 de los 76 pueblos de la Isla. Revela el estudio, realizado como parte de un inventario general del crimen en el país, que por lo menos 350 de las 5,664 personas relacionadas con el juego entran en la categoría de banqueros y los restantes 5,314 son vendedores que reciben remuneración por sus actividades."

Véase también la edición del periódico EL DÍA del 5 de abril de 1967, pág. 16.

en la consideración de dos factores básicos que se repiten
con frecuencia en los procesos por estos delitos cuya carac-
terística distintiva es la clandestinidad: la demora en en-
causar a los infractores y la declaración única del agente
encubierto. En *Ross* v. *United States*, 349 F.2d 210 (1965),
la primera expresión sobre el particular, se hace hincapié
en que la demora en iniciar el proceso—siete meses—puede
ser tan onerosa y opresiva que en efecto constituya una
negación del debido procedimiento de ley. Expresa referencia
se hace al "espectáculo reciente de convicciones basadas en el
único testimonio del agente encubierto, que por razón del
tiempo transcurrido no podía declarar sin la ayuda de notas".
Véanse además, *Bey* v. *United States*, 350 F.2d 467 (1965);
*Cannady* v. *United States*, 351 F.2d 817 (1965); *Jackson* v.
*United States*, 351 F.2d 821 (1965); *Powell* v. *United States*,
352 F.2d 705 (1965); *Worthy* v. *United States*, 352 F.2d 718
(1965); *Roy* v. *United States*, 356 F.2d 785 (1965); *Daniels*
v. *United States*, 357 F.2d 587 (1966); y *Morrison* v. *United*
*States*, 365 F.2d 521 (1966). Si bien es verdad que el acusado
debe demostrar que la demora en radicar la acusación le ha
causado perjuicio, como ésta es responsabilidad del Estado
y se permite para su beneficio, no puede requerírsele un peso
de prueba exaccionante. Como se dijo en *Jackson*, supra,
muchas veces la dificultad en establecer el perjuicio es la
mejor evidencia de su existencia. Siendo la defensa de coar-
tada la que usualmente se presenta, no debe olvidarse que la
mayoría de los infractores pertenecen a una estrata sub-
cultural tipificada por la monotonía en el diario vivir, y que
esta misma ausencia de acontecimientos importantes en sus
vidas les impide distinguir un día de otro día.

▉ Para corregir estas situaciones de manifiesta de-
sigualdad, la Corte de Apelaciones del Distrito de Columbia
invocó su facultad inherente de supervisar los procedimientos
judiciales. Es ese mismo poder de supervisión el que ahora

ejercitamos. *En casos de esta naturaleza la función judicial no puede limitarse a determinar sobre la suficiencia de prueba y la credibilidad de testigos.* Ante el conocimiento de una situación de evidente desventaja para los acusados, pecaríamos de fetichistas, si nos limitáramos a cerrar los ojos ante la realidad y a aplicar con precisión electrónica la doctrina de no intervención con la apreciación de la prueba. Nuestra responsabilidad con un sistema de orden e imparcialidad en los procedimientos judiciales no se satisface plenamente con trasladar el problema al ámbito legislativo; demanda que en la consideración de los recursos ante nos requiramos prueba que rodee la sola declaración del agente encubierto de algo más que los particulares mínimos para establecer la infracción. (²) Afirmamos que las circunstancias particulares de cada caso deben gobernar no sólo la admisión de evidencia obtenida mediante el ardid o el engaño, como dijo el Tribunal Supremo federal en *Lewis* v. *United States,* supra, sino también *el efecto* de tal evidencia. No es necesario tampoco que variemos la norma adoptada en *Pueblo* v. *Seda,* 82 D.P.R. 719 (1961), pues desde entonces habíamos previsto los riesgos inherentes que tendría una aplicación meramente mecánica de la misma.

En el presente caso nos enfrentamos nuevamente a una convicción de José Soto Zaragoza por infracción a la Ley de Bolita. (³)

---

(²) Las actuaciones de los tribunales de instancia indudablemente responden a la actitud asumida anteriormente por este Tribunal de confirmar. sentencias por infracciones de bolita con la única declaración del agente encubierto, usualmente un testimonio "flaco y descarnado" como lo caracterizamos en *Pueblo* v. *Ayala Ruiz,* supra. En 1964 y 1965, de 39 apelaciones en casos de bolita, confirmamos 35 y revocamos la sentencia en cuatro ocasiones, dos por insuficiencia de prueba, una por haber intervenido un registro ilegal y una por estimar que hubo un entrampamiento. En 1966, antes de la decisión en *Pueblo* v. *Ayala Ruiz,* supra, confirmamos las sentencias en los 14 recursos de apelación resueltos.

(³) En *Pueblo* v. *Soto,* 71 D.P.R. 830 (1950), la sentencia impuéstale no pudo prevalecer porque la evidencia presentada en su contra fue el

En 2 de septiembre de 1964 (⁴) el fiscal formuló acusación contra Soto Zaragoza y Carlos Palacio Amador imputándoles que cuatro meses antes, el día 6 de mayo, actuando en concierto y de común acuerdo, tenían en su poder y dominio material relacionado con el juego ilegal de la bolita. La lectura de la acusación se llevó a cabo el 21 de septiembre, concediéndoseles término para presentar alegación, lo que hicieron mediante escrito de 6 de noviembre informando que su defensa sería la de coartada. Ante el pedido de la defensa, el fiscal informó que no disponía de prueba documental.

En el juicio de la causa la única prueba de cargo consistió en el testimonio del agente encubierto Ramón Calderón, quien declaró que había sido destacado en el sector de Villa Palmeras para conseguir prueba por infracciones a la Ley de Bolita desde hacía cerca de dos meses y medio, y que para facilitar su labor, se hacía pasar como mecánico en un garage de los hermanos Sanjurjo, situado a una distancia de cuatro casas de la residencia del coacusado Palacio; que el miércoles 6 de mayo, alrededor de las seis de la tarde se encontraba frente a la residencia de Palacio y observó cuando llegó Soto en un automóvil Buick y se detuvo al frente de la casa; que se encontraba como a dos o tres pies del automóvil, pegado a la verja de la casa; que Palacio bajó de su casa y se montó en el automóvil al lado de Soto, en la parte derecha delantera, y estuvieron hablando por espacio de cinco minutos, y al rato Soto sacó un paquete que tenía sobre el asiento y se lo entregó a Palacio; que al abrir Palacio el

producto de un registro ilegal practicado por la policía. Dos años después, en *Pueblo* v. *Soto*, 73 D.P.R. 55 (1952), confirmamos una resolución del tribunal de instancia que había anulado una sentencia condenatoria por haber sido obtenida la misma mediante fraude perpetrado por miembros de la policía.

(⁴) La declaración jurada que se presentó a los fines de la determinación de causa probable es de fecha 24 de agosto, 3 meses 18 días después de los hechos imputados.

paquete pudo observar que eran números de tres cifras con espacio a la derecha y otras cantidades; que luego Palacio se desmontó y entró a su casa; que a los pocos minutos Soto también entró en la casa en donde permaneció por espacio de quince minutos; que no recuerda los números.

En la repregunta declaró que después del 6 de mayo, fecha de los hechos relatados, no trabajó más como agente encubierto en el sector de Villa Palmeras; que fue trasladado fuera de San Juan, pero no recuerda el pueblo; que ese día a las 6:00 P.M. estaba semiobscuro; a la pregunta de si su misión consistía en vigilar a Soto y a Palacio exclusivamente, declaró que sí y a otros violadores también, pero admitió que como resultado de su labor se encausó solamente a éstos y a ninguna otra persona; que el paquete estaba envuelto en papel de estraza, pero no recuerda el tamaño, admite que en la declaración jurada prestada a los fines de la determinación de causa probable no dice que Palacio se montó en el automóvil de Soto; que Palacio le pasó por el frente cuando fue al carro de Soto; que no se dobló para observar la entrega del paquete; que el automóvil no tenía la luz interior prendida; que no había poste de luz eléctrica cerca, pero sí había luz en el balcón de la casa; que Soto se estacionó un "poquito" más adelante del portón de la casa.

Alberto Sanjurjo, testigo de defensa, declaró ser el dueño del taller de hojalatería y pintura sito en la Calle Merhoff 203 de Villa Palmeras a que aludió el agente Calderón; que le conoce y que éste nunca ha trabajado en su taller.

También se presentó en evidencia una hoja de Registro de Peleas de Gallos de la Administración de Parques y Recreo correspondiente a las peleas celebradas el 6 de mayo en la Gallera San Andrés. Armando Santos, un gallero profesional, que cuida los gallos de Soto, testificó que en la fecha indicada se celebraron peleas en la Gallera San Andrés, situada en el barrio Caonillas de Carolina; que los miércoles

es uno de los días en que se juega durante la temporada; que llevó tres gallos de Soto; que a las 9:00 A.M. llegó a la gallera en compañía de Soto y allí permanecieron hasta cerca de las 8:00 P.M.; en que ambos regresaron en el automóvil de Soto; que Soto permaneció en la gallera; que las peleas se inscriben a nombre del gallero. De la hoja de registro aparece que Armando casó tres peleas, las núms. 9, 12 y 18. El cantinero de la gallera declaró que Soto estuvo ese día en la gallera desde aproximadamente las 9:00 A.M. a las 7:30 P.M.; que recuerda la hora en que salió porque fue a pagarle los "tickets" pendientes.

■ Previamente es procedente apuntar que el tiempo transcurrido entre la alegada comisión de la ofensa y la presentación de la acusación—alrededor de cuatro meses—no es irrazonable ni opresivo. Tampoco perjudicó a los apelantes en la preparación de su defensa de coartada.

■ Mas, un análisis sereno y objetivo de la prueba, deja una gran insatisfacción en nuestra conciencia respecto a que se haya establecido la culpabilidad de los acusados en la forma competente a que aludimos al comienzo de esta opinión. De la declaración del agente se deduce que fue destacado expresamente para perseguir a Soto y a Palacio. Su versión de los hechos—la observación de la entrega de un paquete cuando estaba semiobscuro, dentro de un automóvil que no tenía luz, y su percepción a distancia de listas de números—si bien establece los particulares mínimos del delito imputado, por sí sola, no cumple con la regla de exigencia de prueba a que hemos aludido anteriormente. Añádase a esto que se le contradijo en cuanto a la justificación que ofrece para su presencia en el sector—su labor de mecánico—y que esta declaración de Sanjurjo no fue impugnada, y que la defensa de coartada sustanciada con prueba oral y testifical había sido oportunamente notificada al fiscal y a pesar de que el fiscal tenía conocimiento de la defensa que se trataría de esta-

blecer y de la prueba con que se contaba para ello, [5] tampoco presentó prueba de refutación ni la contradijo en forma alguna. Las convicciones no pueden prevalecer. [6]

*Se revocarán las sentencias dictadas por el Tribunal Superior, Sala de San Juan, en 8 de febrero de 1965.*

El Juez Presidente Señor Negrón Fernández, al igual que el Juez Asociado Señor Belaval, concurre en la opinión disidente emitida en este caso por el Juez Asociado Señor Santana Becerra.

—O—

Opinión Disidente emitida por el Juez Asociado Señor Santana Becerra en la cual concurren el Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Belaval.

San Juan, Puerto Rico, 24 de abril, 1967

En 2 de septiembre de 1965 se imputó en una sola acusación a los apelantes José Soto Zaragoza y Carlos Palacio Amador que en 6 de mayo de 1964 tenían en su poder y dominio material relacionado con el juego ilegal de la bolita. Convictos en juicio que se celebrara el 8 de febrero de 1965, recibieron sentencias cada uno de año y medio de cárcel.

Un examen detenido del récord me produce la convicción que existe prueba suficiente y competente en derecho para

---

[5] La vista se celebró el 8 de febrero de 1965, la notificación de la defensa de coartada en 16 de noviembre de 1964. Antes del juicio, en 23 de diciembre de 1964, se le notificó al fiscal una moción sobre citación del encargado de la división de récords de la Administración de Parques con los informes de las jugadas de gallos celebradas el 6 de mayo en la Gallera San Andrés.

[6] Aunque no se ha planteado específicamente como error observamos que en la acusación presentada no se alega que el material en poder de los apelantes relacionado con el juego de la bolita podía utilizarse en dicho juego ilícito o que está conectado con la práctica de dicho juego. Véanse, *Pueblo v. Trinidad Fernández*, 93 D.P.R. 897 (1967), *Pueblo v. Mantilla*, 71 D.P.R. 36 (1950) ; *Pueblo v. De Jesús*, 70 D.P.R. 37 (1949).

sostener las convicciones, por lo menos, mientras *Pueblo* v. *Seda*, 82 D.P.R. 719 (1961), sea jurisprudencia de este Tribunal.

La prueba de cargo no es una prueba *irreal* o intrínsecamente increíble. Lo que este agente encubierto dice que vio lo podía ver a los dos pies de distancia según su declaración. Esta prueba no fue contradicha. Por el contrario, su testimonio de que el sitio era frente a la casa de Palacio en el número 210 de la Calle Merhoff fue corroborado por un testigo de la defensa.

Tampoco es un hecho irreal e intrínsecamente increíble el que viera las listas a dos pies de distancia sin que hubiera luz prendida dentro del automóvil. Los hechos ocurrían a las 6 de la tarde más o menos. Tomó conocimiento judicial que el 6 de mayo de 1964 el sol se puso en San Juan a las 6:47. Por tres cuartos de hora estuvo aún sobre el horizonte y era claramente de día, sin que se necesitara luz artificial para ver.

La prueba, que no es irreal ni en sí misma increíble, es suficiente para condenar bajo la continua línea de fallos confirmatorios basados en *Seda*, si la misma fue creída por el Juez sentenciador como en efecto la creyó después de dirimir los conflictos en ella.(1) Aun cuando la función de dar o no crédito a determinado testimonio oral es prerrogativa del juzgador, un examen del récord y de la prueba de defensa—una coartada—no me convence que el Juez sen-

---

(1) El agente dijo que vestía con mahones de mecánico y *aparentaba* ser un mecánico que estaba "ayudándole a un muchacho que tiene un taller de mecánica en esa calle." En la repregunta, dijo que trabajó tres semanas de mecánico en un garage que dijo ser de los hermanos Sanjurjo. El testigo de defensa Alberto Sanjurjo declaró tener un taller de hojalatería y pintura en la Calle Merhoff Núm. 203, que había conocido al agente cuando era policía, antes de ser policía y que le había pintado un carro. Expresó que el agente no trabajó con él en ese taller como empleado ni gratuitamente. Hacía 15 años que era vecino del acusado Palacio. El Juez dirimió el conflicto de credibilidad sobre un hecho colateral traído para fines de atacar la credibilidad del agente.

tenciador ejerciera tal prerrogativa en forma desnaturalizada o meramente caprichosa. La evidencia documental admitida en nada prueba que a la hora de la comisión del delito imputado el apelante Soto Zaragoza estuviera en una Gallera, ni que lo hubiera estado en todo ese día. Por el contrario, establece que los gallos supuestamente propiedad de este apelante y que fueron jugados se inscribieron y jugaron como de otra persona, uno de los testigos de defensa, según éste también declarara.

El acusado Palacio no trajo siquiera esa prueba de coartada, ni otra alguna para contradecir la de cargo.

Se señala por la mayoría el hecho "que la defensa de coartada sustanciada con prueba oral y testifical había sido oportunamente notificada al fiscal y a pesar de que el fiscal tenía conocimiento de la defensa que trataría de establecer y de la prueba con que se contaba para ello, tampoco presentó prueba de refutación ni la contradijo en forma alguna." Se anota al margen que la defensa notificó al fiscal el 23 de diciembre de 1964 una moción sobre citación del encargado de la división de récords de la Administración de Parques con los informes de las jugadas de gallos celebradas el 6 de mayo en la Gallera San Andrés.

Aparte de que la evidencia de coartada del acusado Soto Zaragoza no es de tal naturaleza contundente en sí misma que requiriera de una prueba de refutación para no ser creída, como no lo fue por el Magistrado sentenciador, vamos al récord.

La acusación se radicó en septiembre 2, 1964. Se leyó el 21 de septiembre. El 6 de noviembre los acusados radicaron una moción haciendo constar:

"Que para dar cumplimiento a la Regla Núm. 74 de Procedimiento Criminal de Puerto Rico, los acusados informan a este Hon. Tribunal así como al Ministerio Público que su defensa será la de coartada."

Ninguna información sobre la coartada suplen los acusados ahí.

En una vista celebrada el 16 de noviembre de 1964, el Fiscal insistió en que la defensa produjera información en cuanto a dicha coartada, dónde estaban los acusados ese día, qué hacían, qué testigos tenían de esos hechos y todas las circunstancias de la misma. La defensa se opuso tenazmente a dar la información y el Tribunal la sostuvo y negó lo solicitado por el Fiscal. No se puede, pues, culpar al Fiscal de no haberse puesto en condiciones para refutar dicha prueba ni deben derivarse por ello inferencias contrarias a su caso.

Por otro lado, las declaraciones de los dos testigos que vinieron a sostener la coartada fueron escurridizas y vagas en aquellas preguntas del Fiscal hechas con miras a que lo pusieran en condiciones de citar testigos de refutación. La moción sobre citación de testigos con informes relacionados con las jugadas del 6 de mayo nada informaba. Como cuestión de realidad, el documento producido por dicha citación tampoco nada informa. Es una hoja de papel sin firma, en que no aparecen ni el nombre de Soto Zaragoza ni el de Palacio, ni contiene la misma dato alguno demostrativo de la presencia en ese día de estas personas en la Gallera allí mencionada.

En este caso se absuelve a los apelantes asumiendo el Tribunal en Segunda instancia la función reservada al juzgador de los hechos de pasar sobre la credibilidad de la prueba y resolver conflictos en la misma, anulándose aquí tal prerrogativa del juzgador según él la ejerciera.

Por las razones de derecho y de norma jurídica que he expuesto en mi opinión disidente en el caso de *Pueblo* v. *Bermúdez Pérez*, 94 D.P.R. 363 (1967), y que doy aquí por reproducidas, disiento también en este caso.

Acepto que pueden haber situaciones en que la prueba de cargo sea tan inherentemente increíble o esté viciada de

irrealidad que no deba ser base para una convicción. Este caso no presenta una situación así.

Preocupa hondamente cuando llegue el momento en que los apelantes en general, ante el precedente de este caso; *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966), y algunos más recientemente decididos bajo parecido medio aunque sin expresión de fundamentos, reclamen el derecho a que, en función ahora asumida en segunda instancia de pasar sobre la credibilidad y resolver conflictos de prueba oral, el Tribunal anule esa función según la haya ejercido un jurado, que no es sino otro juez de los hechos, a menos que se quiera establecer doctrina aparte sólo para los casos de bolita.

Acepto que el Tribunal no está irrevocablemente atado a normas sentadas previamente. Una norma, si ha de sustituirse o modificarse, debe serlo por otra norma, de modo que los jueces de instancia tengan un claro principio de derecho a aplicar. No son ellos quienes, en el ejercicio de su función normal de apreciar y creer la prueba o no creerla, han situado a los acusados en casos de bolita en una "situación de evidente desventaja." En esa posición, si es que lo están, los puso la norma de suficiencia de prueba en derecho para condenar que este Tribunal sentó en el caso de *Seda*. Hasta ese momento los jueces de instancia no condenaban con la sola declaración de un agente, sin más. Por el contrario, la ausencia de otra prueba ha sido constantemente justificada o condonada en una línea inalterable de fallos durante varios años que siguieron a *Seda*, y hasta recientemente, a base de que el sistema de agente encubierto así lo demanda.

No sanciono el que exista un estado de derecho en que el ciudadano acusado esté en una reconocida situación de evidente desventaja en el proceso donde está envuelta su inocencia. Pero obviamente los jueces de instancia han de estar ahora en una situación un tanto perpleja en su función de fallar, ante una prueba que se tiene dicho es en derecho sufi-

ciente y competente, de un lado, y de otro lado, ante criterios de apreciación y credibilidad en el proceso subjetivo de formar juicio, que ya no son los suyos, sino los de los jueces de este Tribunal. No creo que ésta sea la debida solución.

Cualesquiera que puedan ser los criterios en el ambiente en cuanto a si la persecución de la bolita responde ya a un fin social o no, y si deben imaginarse o producirse otros medios de afrontar el problema de este juego o la manera de perseguirlo, corresponde al Poder Legislativo determinarlo. Mientras tanto, la política pública hasta ahora que el Poder Judicial debe hacer valer es la contenida en la Ley Núm. 220 de 1948.(²)

---

(²) La acusación en este caso imputa delito. La Sec. 4 de la Ley Núm. 220 de 1948 castiga la *posesión* de material conectado con el juego de bolita. Si se imputa que el material está conectado con el juego ilegal, lógicamente es susceptible de ser utilizado en el mismo. Las Reglas 38 y 64(*o*) de las de Procedimiento Criminal proveen a un acusado bajo la Sec. 4 de la Ley Núm. 220 el mecanismo para defenderse de la posesión de material inocente mediante la exigencia al Fiscal de un pliego de especificaciones. Si el pliego no revela material prohibido, la acusación se desestima bajo la Regla 64(*o*).