EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO BONILLA MEDINA, acusado y apelante.

*Número:* CR-68-21      *Resuelto:* 8 de junio de 1970

*Benjamín Ortiz,* abogado del apelante; *Rafael A. Rivera Cruz, Procurador General,* y *Adolfo Negrón Cruz, Procurador General Auxiliar,* abogados de El Pueblo.

SENTENCIA

San Juan, Puerto Rico, a 8 de junio de 1970

El apelante fue convicto de dos violaciones a la Ley de Armas, consistentes en portar un revólver calibre 22 descargado sin tener licencia para portar armas y en tener en su posesión la misma arma sin tener licencia para poseer armas de fuego. Se le condenó a cumplir siete meses de cárcel concurrentemente en ambos cargos.

La prueba del pueblo, por voz del único testigo de cargo, el policía que intervino con el apelante, es en el sentido de que mientras el equipaje de éste—que consistía de dos bolsas de papel de las conocidas por *shopping bags* y un paquete— era inspeccionado por un inspector de aduanas en el aeropuerto (el apelante salía de viaje) le encontraron en un paquete, o en el gabán, o en el abrigo, un revólver calibre 22 descargado. El apelante declaró que él puso sus paquetes sobre un banco frente al portón de salida Núm. 8 y fue al cuarto de baño; que al regresar recogió su propiedad y la puso sobre la mesa del inspector de aduanas y éste sacó el revólver y llamó al policía y entonces puso el revólver dentro del bolsillo de la capa del apelante y le entregó la capa con el revólver al policía. Declaró que el revólver no era suyo y que él no lo portaba.

La prueba de cargo es sumamente confusa. El policía declaró primero que el inspector de aduanas le dijo "Mira Rodríguez ese señor lleva un revólver y yo busqué el paquete y saqué el revólver." Más adelante declaró que el apelante tenía el revólver "en los bolsillos." Declaró que el inspector de aduanas estaba registrando los paquetes; que el revólver iba "en el paquete del gabán, no iba en el 'coat'"; declaró "le metí la mano y lo saqué yo." El policía declaró que era

un revólver "Colt" y también que era uno marca "Brevetatta" [*sic*] de fabricación italiana. (Probablemente quiso decir "Beretta," que es una marca italiana de armas de fuego.)

No creemos que una prueba tan confusa pueda destruir la presunción de inocencia del acusado ni que sea suficiente para enviarlo siete meses a la cárcel.

Se revoca la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 8 de septiembre de 1967.

Así lo pronunció y manda el Tribunal y certifica el Secretario. Los Jueces Asociados Señores Pérez Pimentel y Santana Becerra disintieron.

(Fdo.) Joaquín Berríos
*Secretario*

—O—

Voto disidente del Juez Asociado Señor Pérez Pimentel

San Juan, Puerto Rico, a 8 de junio de 1970

Después de leer la transcripción de la evidencia, me veo obligado a disentir.

La aparente confusión en el testimonio del policía se disipa al considerar en conjunto su declaración. El referirse el policía a que el apelante llevaba el revólver en los bolsillos obviamente se refiere a los bolsillos de la prenda de vestir que el apelante llevaba dentro del paquete. De ahí fue que el policía sacó el revólver cuando el agente de aduana le dijo que "este señor lleva algo aquí." No dijo el policía que el revólver era Colt y luego rectificara para decir que era Brevetatta. Lo que dijo fue: "Un revólver Colt 22 marca Brevetatta, fabricación italiana."

El revólver fue presentado y admitido en evidencia. Fue ocupado en el paquete del apelante. Su propia declaración corrobora ese hecho. Oigamos al apelante.

"R.—El día 4 de abril en el aeropuerto a las 3:00 de la tarde yo tenía un paquete y un gabán frente al 'gate' 8 y yo ando con mi hija, voy a llevarla, y entonces cuando vengo ya habían dado la salida y cojo los paquetes y salgo seguida y la echo alante. Al llegar a la aduana pongo los paquetes que tengo en la mesa y llevaba la capa y el gabán aquí y él me dice . . .

P.—Quién le dice?

R.—El de la aduana que qué era eso que hay ahí, hay que rebuscar. El viene y buscó y sacó un revólver. Yo no se de quién es eso, porque yo nuna [*sic*] ando y entonces sacó el revólver así y llamó al policía que viniera acá.

P.—Cuando llegó el policía dónde estaba el revólver ese?

R.—El revólver lo tenía en la mano.

P.—O sea, el policía llamó después que el agente lo tenía en la mano?

R.—Después y cuando llegó lo echó al bolsillo.

P.—Quién lo echó al bolsillo?

R.—El de la aduana y entonces le dió la capa al policía.

P.—Cuando llegó el policía lo tenía en la mano?

R.—Ya él había registrado todo.

P.—El rebuscó cuando pidió tirase todo aquello allí?

R.—Me dijo lo tirara ahí que querían rebuscarla.

P.—Ahí fue?

R.—Ahí fue.

P.—Dónde usted había dejado ese gabán y ese 'coat'?

R.—En el banco frente al 'gate' 8.

P.—Por qué razón?

R.—Llevaba paquetes y eso y me era imposible llevar y fuí al servicio y me era más cómodo y lo dejé puesto ahí encima.

P.—Ese revólver usted lo había puesto en ese gabán?

R.—Yo no se de qué revólver se habla. Yo no ando con nada encima." (T.E. págs. 17 a 19.)

El conflicto en la prueba sobre si el revólver lo llevaba el apelante en su paquete, o si fue que alguien lo puso allí sin su conocimiento, fue resuelto en su contra por el juzgador de los hechos y no hay base para revocar su determinación.

Ahora bien, considero que el tribunal debió darle la oportunidad al acusado para presentar como testigo de defensa, según lo solicitó, al inspector de aduana que intervino

en el registro de sus pertenencias. Ese testigo fue citado como testigo de cargo a petición del fiscal pero no compareció al juicio. El acusado insistió en que se citara para que declarara como testigo de defensa. Considero que debió accederse a ello, por lo que revocaría la sentencia apelada y ordenaría la celebración de un nuevo juicio.

—O—

Voto disidente del Juez Asociado Señor Santana Becerra

San Juan, Puerto Rico, 8 de junio de 1970

Estoy de acuerdo con la expresión disidente del compañero Pérez Pimentel. La prueba directa de cargo según aparece del breve récord taquigráfico, es la siguiente:

*"Declaración Jurada*
*de*
*Wilfredo Rodríguez Martínez*

HON. FISCAL:—
    P.—Su nombre, por favor?
    R.—Wilfredo Rodríguez Martínez.
    P.—Allá para el 4 de abril de 1967 a qué se dedicaba?
    R.—Yo era policía y trabajaba en el Aeropuerto Internacional.
    P.—Policía Estatal?
    R.—Sí.
HON. JUEZ:—
    Dónde trabajaba?
    R.—Aeropuerto Internacional.
HON. FISCAL:—
    P.—Ese día 4 de abril de 1967 como a eso de las 3:00 de la tarde estaba usted trabajando?
    R.—Sí señor.
    P.—Como policía?
    R.—Sí señor
    P.—En dónde?
    R.—Aeropuerto Internacional, sala de espera.

P.—Ese día tuvo usted oportunidad de ver a don Francisco Bonilla Medina?

R.—Sí señor.

P.—Se encuentra ese ciudadano aquí?

R.—Sí señor.

P.—Dónde está?

R.—Está ahí.

HON. FISCAL:—

Señala al acusado.

P.—Intervino usted con ese ciudadano ese día?

R.—Sí señor.

P.—Explíquele al Honorable Juez, cuál fue su intervención?

R.—La intervención fue después que él iba que estaba pasando la inspección de aduana, del señor Rafael Bird, aduanero, mientras inspeccionaba, él llevaba un solo paquete . . .

LCDO. ORTIZ:—

Objeción a lo que no haya visto él personalmente.

HON. JUEZ:—

Usted vio eso?

R.—Sí señor.

HON. JUEZ:—

Adelante.

R.—Yo estaba al lado del aduanero que inspeccionaba aquellos paquetes y me dijo: 'mira Rodríguez ese señor lleva un revólver' y yo busqué el paquete y saqué el revólver.

P.—Qué tipo de revólver?

R.—Un revólver Colt 22 marca Beretta, fabricación italiana.

P.—Cómo era ese revólver?

R.—Revólver pequeño calibre 22, cachas blancas, no tiene número de serie.

HON. FISCAL:—

Estamos mostrando al compañero.

LCDO. ORTIZ:—

Muy bien.

HON. FISCAL:—

P.—Testigo, mire a ver si reconoce esto que yo le muestro?

R.—Esto mismo es el revólver.

P.—Había visto usted eso que le muestro antes del día de hoy?

R.—Sí señor.

P.—Cuándo fue la primera ocasión que lo vio?

R.—Día 4 de abril.

P.—En ocasión de qué, dónde lo vio?

R.—Después que el aduanero me dijo que llevaba un revólver en el bolsillo.

LCDO. ORTIZ: —

Objeción a lo que haya dicho el aduanero.

HON. FISCAL: —

Para establecer motivo o razón.

LCDO. ORTIZ: —

Pero no por prueba de referencia.

HON. JUEZ: —

Hay una manifestación de un aduanero, con motivo de lo cual inmediatamente este señor intervino con este acusado. También eso forma parte del 'res-gestae'. Se permite como parte del 'res-gestae'.

HON. FISCAL: —

P.—En poder de quién estaba ese revólver?

R.—En poder del acusado, lo tenía en los bolsillos.

HON. FISCAL: —

Que se marque identificación, Vuestro Honor.

HON. JUEZ: —

Se marca identificación 1 de El Pueblo.

HON. FISCAL: —

P.—Qué usted hizo entonces testigo si hizo algo después que le ocupa el arma?

R.—Yo esperé que el aduanero terminara de chequear los paquetes y lo conduje al cuartel.

P.—Y después de eso?

R.—Se lo informé al sargento y el sargento me indicó que llevara el caso donde el juez.

P.—Y en qué sitio ocurrió eso testigo, en qué sitio del aeropuerto?

R.—Saliendo de la salida #8 del aeropuerto antes de bajar las escaleras donde los aduaneros inspeccionan los paquetes.

P.—Eso fue jurisdicción de qué pueblo?

R.—El aeropuerto pertenece a Carolina.

*Eso es todo.*

HON. JUEZ: —

Defensa.

LCDO. ORTIZ: —

P.—Usted declaró ante el fiscal?

HON. FISCAL: —

Estamos entregando al compañero copia de la declaración jurada que él prestara el 9 de mayo de 1967 ante el Hon., la honorable fiscal Lilia Oquendo.

HON. JUEZ: —

Puede examinarla la defensa.

LCDO. ORTIZ: —

P.—Quién es ese aduanero?

R.—Señor Rafael Bird, no está presente.

P.—El no está aquí hoy?

R.—No señor.

P.—Dígame y en qué sitio usted estaba en el aeropuerto?

R.—La puerta de salida número 8.

P.—Cómo estaba la puerta; la aduana dónde queda?

R.—La aduana queda al otro lado pero cuando va a salir un vuelo tiene que ir un aduanero para inspeccionar los paquetes que llevan, no.

P.—Entonces había uno allí?

R.—Sí.

P.—A qué distancia usted estaba de ese aduanero?

R.—Estaba a tres pies de distancia.

P.—Qué paquetes llevaba en la mano este señor Bonilla?

R.—Llevaba él dos bolsas que llaman 'shopping bags' que cuestan cinco centavos.

P.—No llevaba un 'coat'?

R.—Llevaba encima del brazo un paquete y un 'coat'.

P.—Usted lo vio a él cuando entraba allí; cuándo usted lo vio a él?

R.—Sí.

P.—Lo había visto antes a él, antes de que el aduanero le llamase la atención?

R.—El pasó al agente de Pan American a chequear el pasaje.

P.—Usted lo había visto a él?

R.—Después que pasó de él chequear el pasaje sí.

P.—Lo veía con un 'coat' en la mano; usted no le notó nada antes que lo llamase el aduanero, no había usted notado nada?

R.—No señor.

P.—No había visto el revólver?

R.—No señor.

P.—No se le veía el revólver en el 'coat' a él?

R.—No señor.

P.—Y el que lo reveló fue el agente de aduana?

R.—Sí señor el primer registro lo hizo el agente de aduana.

P.—Cómo?

R.—El agente de aduanas estaba registrando los paquetes.

P.—Si le rebuscó el 'coat' usted?

R.—El agente de aduana buscándolo por debajo pues tocó el revólver.

P.—Usted lo vio cuando le tocó el revólver, cuando tocó el 'coat'?

R.—Tocó algo y dijo 'este señor lleva algo aquí'.

P.—No se veía de afuera ni nada?

R.—No señor.

P.—Y el registro del 'coat' el que lo hizo fue el agente?

R.—El revólver iba en el paquete del gabán, no iba en el 'coat'.

P.—Quién lo registró, el agente?

R.—Después que lo tocó y me dijo que llevaba un revólver le metí la mano y lo saqué yo.

P.—Y usted no había visto ese revólver antes?

R.—No señor.

P.—Testigo esta es su firma, lea la declaración esa.

Hon. Juez: —

Léala para usted.

Lcdo. Ortiz: —

P.—Es o no cierto que usted declaró aquí que el registro lo hizo el agente de aduana?

R.—El registro que estaba haciendo el agente de aduana.

P.—Ese es el que registró?

R.—Ese estaba haciendo el registro.

P.—Registro del pasajero, Rafael Bird?

R.—Era el que estaba haciendo el registro pero el revólver se lo saqué yo.

P.—Y por qué dice aquí que el registro lo hizo el agente de aduana?

R.—El registro de los paquetes.

P.—De todos modos hasta que el agente de aduana no le llamó la atención a usted, usted no había notado nada?

R.—No señor.

P.—Lo había visto antes en la fila y demás?

R.—. . . .

P.—Es o no cierto que el agente lo llamó a usted con el revólver en la mano del agente y que usted no registró nada allí?

R.—No señor.

*Nada Más con el testigo."*

Convengo igualmente con el compañero Pérez Pimentel en que la declaración del acusado que reproduce en su voto tiende a corroborar el hecho esencial de la ocupación del revólver. A mi entender, la prueba de cargo fue lo suficientemente clara para establecer la comisión del delito imputado.

Pero aun cuando no lo hubiera sido, es precisamente la función por excelencia del juzgador de primera instancia el resolver contradicciones y conflictos evidenciarios, en su misión de pesar y evaluar la prueba con la ayuda de otros elementos objetivos que no vienen retratados en un récord.

Consecuente con mi posición, unas veces con expresión de mi criterio—véanse entre otras mis opiniones minoritarias en *Pueblo v. Soto Zaragoza,* 94 D.P.R. 350 (1967); *Pueblo v. Bermúdez Pérez,* 94 D.P.R. 363 (1967), y la de *Pueblo v. Berdecía Rodríguez* concurriendo en el resultado, decidido en mayo 16, 1968 (96 D.P.R. 65, 74)—y otras veces sin dicha expresión, sigo objetando el traslado a esta Segunda instancia, caso por caso, de la función de credibilidad, peso y evaluación de la prueba. Me reafirmo en que no lo creo una norma saludable en la administración de la justicia por razones que antes he expresado.

Hay presente el peligro, por ser la Segunda instancia un tribunal colegiado y fallarse por el récord este aspecto

claramente subjetivo, de que no exista la deseable uniformidad en la disposición de los casos en apelación, ante la ausencia a la vez de otra norma clara y definida de derecho en cuanto a en qué caso ha de seguirse el clásico criterio de no intervenir con esta función reservada al juzgador de Primera instancia, y en qué caso no ha de seguirse.

No me refiero a una situación de insuficiencia en ley de prueba competente para condenar, lo cual presenta un error de derecho de nuestra clara competencia, ni al caso de una prueba sencillamente irreal o contraria al orden natural y establecido de las cosas. El caso ahora ante nos no cae en ese plano.

Se cometió un error fundamental por la Sala al negarse a citar y oir al agente de aduanas, que el apelante pidió que declarara.

Por lo anteriormente expuesto estoy de acuerdo en que se debe disponer de este caso como lo expresa el Juez Pérez Pimentel en su voto disidente, con la concesión de un nuevo juicio.