EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Aneudy Crespo Cumba<br><br>Peticionario | Certiorari<br><br>2015 TSPR 133<br><br>193 DPR ____ |

Número del Caso: CC-2015-791


Fecha: 5 de octubre de 2015


Tribunal de Apelaciones:

        Región Judicial de Mayagüez – Aguadilla Panel XI


Abogado de la Parte Peticionaria:

        Lcdo. José M. Cruz Ellis


Oficina de la Procuradora General:


        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcdo. Iván Rivera Labrador
        Procurador General Auxiliar


Materia: Resolución del Tribunal con Voto Particular Disidente


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                          CC-2015-791    Certiorari

Aneudy Crespo Cumba

    Peticionario

RESOLUCIÓN

San Juan, Puerto Rico, a 5 de octubre de 2015.

A la *Moción en auxilio de jurisdicción* y al recurso de *certiorari*, no ha lugar.

Notifíquese por teléfono, facsímil y por la vía ordinaria.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres hace constar que al estar imposibilitado de evaluar su petición como un hábeas corpus proveería no ha lugar, sin perjuicio de que el peticionario presente en el Tribunal de Primera Instancia un recurso de hábeas corpus que cumpla con los requisitos de forma que exige el Código de Enjuiciamiento Civil. El Juez Asociado señor Feliberti Cintrón se une a la expresión del Juez Asociado señor Martínez Torres.

El Juez Asociado señor Estrella Martínez emitió un Voto Particular Disidente.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                           CC-2015-791        Certiorari

Aneudy Crespo Cumba

    Peticionario


Voto Particular Disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ


San Juan, Puerto Rico, a 5 de octubre de 2015.


    Disiento por resultar imperativo expresarnos, por primera vez, en torno a si el Estado posee un poder irrestricto que le permite extender injustificada e irrazonablemente la fase de ejecución de una sentencia penal o si, por el contrario, existen garantías que resguardan a los ciudadanos y le permiten cuestionar, ante el foro judicial, ese grado de dilación.

    A la luz de las garantías reconocidas en este disenso, opino que erraron los foros recurridos al denegar un remedio sin la celebración de una vista al respecto. En consecuencia, hubiese

revocado y devuelto el caso al foro primario para la celebración de una vista, en un término perentorio, en la cual se aplicaran los criterios aquí expuestos.

**I**

Por motivo de unos hechos ocurridos el 15 de agosto de 1996, el Ministerio Público presentó dos denuncias contra el Sr. Aneudy Crespo Cumba (señor Crespo Cumba o peticionario) en las que le imputó infringir los delitos menos graves de agresión agravada, 33 LPRA ant. sec. 4032, y amenazas, 33 LPRA ant. sec. 4194, tipificados en el Código Penal entonces vigente. Celebrados los procedimientos de rigor, el señor Crespo Cumba fue hallado culpable de los delitos imputados. Así las cosas, el 2 de septiembre de 1997, el Tribunal de Primera Instancia emitió una Sentencia por medio de la cual le impuso al peticionario una pena de reclusión de 6 meses consecutivos por cada delito, para un total de 1 año. Tras varios trámites procesales, el foro primario concluyó que no existía impedimento legal por el cual no debía conceder el beneficio de sentencia suspendida al señor Crespo Cumba. Por tal razón, su Sentencia fue suspendida bajo el régimen de libertad a prueba.

Empero, mientras se encontraba disfrutando del beneficio de libertad a prueba, el señor Crespo Cumba incumplió con las condiciones al arrojar positivo en una prueba de sustancias controladas. Ante ello, el Ministerio Público solicitó la revocación de la sentencia suspendida. Ponderada la petición del Ministerio Público, el Tribunal

de Primera Instancia inició el proceso de revocación. Luego de varios señalamientos en torno al particular, se celebró la vista final de revocación, a la cual el señor Crespo Cumba no compareció. No obstante, su representante legal estuvo presente.

Celebrada la referida vista, el **14 de enero de 1999**, el tribunal de instancia dictó una Sentencia en la cual revocó la libertad a prueba del señor Crespo Cumba y ordenó su arresto inmediato y detención hasta que cumpliese la pena de 1 año de reclusión que le fuera impuesta. Transcurrió el tiempo y tras **16 años** de emitida la orden de arresto, ésta fue diligenciada el **16 de junio de 2015**.[1]

Insatisfecho con dicha actuación, el 18 de junio de 2015, el peticionario instó ante el foro primario una *Moción urgente al amparo de la Regla 192.1 de las de Procedimiento Criminal*. En esencia, arguyó que no existía justificación para que el expediente de su caso se archivara y no se realizara el arresto diligentemente para cumplir con la sentencia impuesta. Argumentó que en consideración al extenso tiempo transcurrido desde que se emitió la Sentencia y a que siempre ha estado accesible dentro de la jurisdicción, se debía dar por cumplida la pena impuesta, o en la alternativa, ordenarle el pago de multas o la realización de servicios comunitarios. Ante ello, el Ministerio Público presentó un escueto escrito

---

[1] Ello significa que, al día en que se emite este pronunciamiento, el Sr. Aneudy Crespo Cumba lleva más de 100 días recluido en una institución penitenciaria.

intitulado *Contestación moción al amparo de la Regla 192.1.* En éste, se limitó a expresar que no procedía la petición del señor Crespo Cumba, porque vivimos en un País de ley y orden, donde cada uno tiene que cumplir con las penas legalmente impuestas por los tribunales. El peticionario presentó una réplica al escrito del Ministerio Público, pero fue declarada no ha lugar. En disconformidad, éste instó una *Moción de reconsideración y otros extremos*, en la cual reiteró los argumentos esgrimidos y la solicitud de remedios. Evaluada esta moción, el 6 de agosto de 2015, el Tribunal de Primera Instancia la declaró no ha lugar.

Inconforme, el señor Crespo Cumba recurrió ante el Tribunal de Apelaciones, mediante petición de *certiorari*. Además, presentó una *Moción en auxilio de jurisdicción* en la cual solicitó su excarcelación mientras se dilucidaba su recurso. En lo pertinente, el peticionario sostuvo que procedía determinar ilegal y violatoria del Art. II, Sec. 12 de la Constitución de Puerto Rico la ejecución de una sentencia penal emitida hace 16 años. Alegó que medió incuria por parte del Estado al diligenciar una orden de arresto tras 16 años de que fuera dictada. De igual forma, argumentó que por el tiempo transcurrido –y por tratarse de delitos menos graves– procedía dar por cumplida la pena impuesta, o en la alternativa, modificar la pena de reclusión por el pago de multas o por la realización de servicios comunitarios. Finalmente, reclamó que procedía la celebración de una vista para dilucidar los méritos de su

solicitud al amparo de la Regla 192.1 de las de Procedimiento Criminal, *infra*.

Aquilatados los argumentos del peticionario, el 31 de agosto de 2015, el foro apelativo intermedio emitió una Resolución en la cual denegó la expedición del recurso y, por tanto, declaró no ha lugar la *Moción en auxilio de jurisdicción*. En esencia, determinó que el dictamen del foro primario se realizó conforme a derecho. A su vez, razonó que la petición presentada por el señor Crespo Cumba no cumplió con ninguno de los requisitos dispuestos en la Regla 192.1 de Procedimiento Criminal, *infra*. En ese sentido, concluyó que la solicitud del peticionario constituía un reclamo abstracto, huérfano de argumentos, por medio del cual se pretendía dejar sin efecto una sentencia válidamente dictada en el 1999. Por último, sostuvo que el remedio solicitado por el peticionario no tenía cabida al amparo de la Regla 192.1 de Procedimiento Criminal, *infra*.

En desacuerdo con ese proceder, el señor Crespo Cumba acude ante este Tribunal mediante un recurso de *certiorari*, en conjunto con una *Moción en auxilio de jurisdicción*. Esencialmente, reproduce los argumentos esgrimidos ante los foros recurridos. Esto es, aunque el peticionario no cuestiona la legalidad de la Sentencia dictada el 14 de enero de 1999, señala que su ejecución -luego de 16 años de emitida- no es proporcional a la gravedad del hecho, así como tampoco propicia su rehabilitación social y moral, en contravención al mandato constitucional. Reitera que por

tratarse de una situación excepcional, en la cual ha mediado incuria y desidia por parte del Estado, se debe dar por cumplida la pena de reclusión impuesta, o en cambio, modificarla al pago de multas o la realización de servicios comunitarios.

De igual forma, el señor Crespo Cumba sostiene que la demora excesiva, injustificada e irrazonable del Estado en ejecutar la Sentencia dictada en el 1999 le ha causado un perjuicio patente y extraordinario en detrimento de su rehabilitación y derechos. También arguye que el Estado no fue diligente, toda vez que se cruzó de brazos durante 16 años, colocándolo en un estado de desventaja. Del mismo modo, alega que el Estado tuvo amplia oportunidad para ejecutar la Sentencia emitida el 14 de enero de 1999, por lo que no debió esperar 16 años para ello.

Además, el peticionario expresa que durante los pasados 16 años ha estado accesible y dentro de la jurisdicción, sin que el Estado haya realizado gestiones afirmativas para efectuar su arresto. Para ello, presenta evidencia de que ha comparecido en innumerables ocasiones ante el Tribunal de Primera Instancia para vistas relacionadas a otros casos y que, incluso, ha colaborado con la Policía en la prevención del crimen en su comunidad. Finalmente, argumenta que no existe motivo que justifique la inacción y dilación injustificada del Estado en diligenciar una orden de arresto emitida hace 16 años, por lo que le debe asistir algún remedio. En vista de ello, nos solicita que revoquemos la determinación del Tribunal de

Apelaciones, ordenemos su excarcelación y procedamos conforme a derecho.

Evaluada la petición de *certiorari*, el 15 de septiembre de 2015, la Sala de Verano III de este Tribunal emitió una Resolución por medio de la cual se le ordenó a la Oficina de la Procuradora General que en un término final e improrrogable de diez (10) días compareciera y expusiera su posición con relación al recurso instado por el peticionario. Se le advirtió que de no comparecer, este Tribunal procedería conforme a derecho.

En su *Escrito en Cumplimiento de Orden*, la Oficina de la Procuradora General expone que procede la desestimación del recurso instado por el peticionario debido a la ausencia de determinados documentos. Además, alega que el señor Crespo Cumba no tiene remedio alguno al amparo de la Regla 192.1 de Procedimiento Criminal, *infra*, y que los remedios existentes establecidos en la Regla 51 de Procedimiento Criminal, *infra*, son inaplicables al presente caso.

Ante la necesidad de una adecuada y oportuna disposición de la controversia y de pautar una norma clara, hubiese expedido el auto solicitado.

## II

En innumerables ocasiones, este Tribunal se ha concentrado en atender la problemática de las dilaciones del Estado en dos etapas del procedimiento penal, a saber: (1) la presentación de cargos criminales y (2) el desenvolvimiento del juicio, es decir, desde su inicio

hasta que se dicta sentencia. En cuanto a la primera etapa, este Tribunal se ha amparado en la garantía constitucional que dispone expresamente que ningún ciudadano será privado de su libertad o propiedad sin el debido proceso de ley, para determinar que la dilación injustificada del Estado en presentar el caso ante el foro judicial puede constituir una violación a esta garantía constitucional. *Véanse* Art. II, Sec. 7, Const. ELA, Tomo 1, ed. 2008, pág. 296; Emda. XIV, Const. EEUU, LPRA, Tomo 1, ed. 2008, pág. 206; *véanse*, además, Pueblo v. Esquilín Maldonado, 152 DPR 257, 263 (2000) (*Per Curiam*); Pueblo v. Santiago, 139 DPR 869, 875 (1996). De esta forma, se ha expresado que para analizar si se infringió el debido proceso de ley en estas circunstancias, procede determinar si la dilación del Estado en presentar los cargos provocó un estado de indefensión a la persona y si esa dilación no está razonablemente justificada, más allá de la liberalidad con que se debe analizar el proceso investigativo. Pueblo v. Esquilín Maldonado, *supra*, pág. 263; *véase*, además, O.E. Resumil, *Derecho Procesal Penal: limitaciones constitucionales al ejercicio del Ius Puniendi*, 71 Rev. Jur. UPR 547 (2002). El grado de prueba requerido en estos casos es el de preponderancia de evidencia. Pueblo v. Esquilín Maldonado, *supra*, pág. 264; Pueblo v. Soto Zaragoza, 94 DPR 350, 353 (1967).

Por su parte, este Tribunal ha resuelto que lo concerniente a las dilaciones en el desenvolvimiento del caso también está cobijado por la Constitución de Puerto

Rico, la cual garantiza el derecho de todo acusado a un juicio rápido. Art. II, Sec. 11, Const. ELA, Tomo 1, ed. 2008, pág. 343. Como regla general, este derecho cobra vigencia desde que el imputado de delito es detenido o está sujeto a responder (*held to answer*). Pueblo v. Custodio Colón, res. el 19 de marzo de 2015, 2015 TSPR 27, 192 DPR ___ (2015); Pueblo v. García Vega, 186 DPR 592, 607 (2012); Pueblo v. Rivera Santiago, 176 DPR 559, 569 (2009); Pueblo v. Rivera Tirado, 117 DPR 419, 431 (1986). En ese sentido, la protección constitucional a un juicio rápido se activa al poner en movimiento el mecanismo procesal que puede concluir con una condena. Pueblo v. Custodio Colón, *supra*.

En repetidas ocasiones, este Tribunal ha aclarado que el derecho a juicio rápido no se limita al acto del juicio propiamente dicho, sino que abarca todas las etapas del proceso desde la imputación inicial del delito.[2] Pueblo v. García Vega, *supra*, pág. 606; Pueblo v. Opio Opio, 104 DPR

---

[2]Adviértase que es pertinente distinguir la detención preventiva del derecho a juicio rápido. Ello, pues, la cláusula de detención preventiva busca evitar que la encarcelación del acusado antes del comienzo del juicio exceda de 6 meses. Art. II, Sec. 11, Const. ELA, Tomo 1, ed. 2008, pág. 344. En cambio, el derecho a juicio rápido tiene el propósito de que el inicio y las demás etapas del juicio no se afecten por dilaciones excesivas e irrazonables. La violación al término de detención preventiva no implica la desestimación del caso penal, sino que procede liberar al imputado y el caso continúa en la etapa en que se encuentre, tal como si se encontrara libre bajo fianza. Por su parte, cuando ocurre un menoscabo al derecho a juicio rápido, el caso es desestimado y, de ordinario, regresa a la etapa inicial de causa probable para arresto. *Véase* L. Rivera Román, *Los derechos de los acusados en los procedimientos penales bajo la Constitución de Puerto Rico y los Estados Unidos*, 46 Rev. Jur. U. Inter. PR 417 (2012).

165, 169 (1975). De esta forma, el referido derecho aplica a distintas etapas del proceso penal desde el arresto del imputado, el traslado ante un foro judicial, la celebración de la vista preliminar, la lectura de acusación y la celebración del juicio. *Véase* L. Rivera Román, *Los derechos de los acusados en los procedimientos penales bajo la Constitución de Puerto Rico y los Estados Unidos*, 46 Rev. Jur. U. Inter. PR 417 (2012). Incluso, esta protección constitucional garantiza que la persona sea sentenciada dentro de un término razonable.[3] Pueblo v. Kuilan Santos, 113 DPR 831, 833 (1983) (*Per Curiam*); Pueblo v. Aponte Vázquez, 105 DPR 901, 904 (1977) (*Per Curiam*); *véase*, además, E.L. Chiesa Aponte, *Los derechos de los acusados y la factura más ancha*, 65 Rev. Jur. UPR 83 (1996).

Al evaluar la razonabilidad de la dilación de los términos de juicio rápido, los foros judiciales deben realizar un balance de intereses a la luz de cuatro factores, a saber: (1) la duración de la tardanza; (2) las razones para la dilación; (3) la invocación oportuna del

---

[3] Es oportuno señalar que el derecho a juicio rápido persigue un propósito dual. Esto, ya que por un lado procura proteger al acusado contra su detención opresiva, minimizar sus ansiedades y preocupaciones, y reducir las posibilidades de que se menoscabe la capacidad del acusado para defenderse. Pueblo v. García Vega, 186 DPR 592, 606 (2012); Pueblo v. Rivera Santiago, 176 DPR 559, 570 (2011). Por otro lado, se satisfacen las exigencias sociales de enjuiciar con premura a quienes son acusados de transgredir sus leyes. Pueblo v. García Vega, *supra*, pág. 607; Pueblo v. Rivera Santiago, *supra*, pág. 570. Lo anterior, unido al interés de evitar que una demora indebida obstaculice el procesamiento efectivo de los acusados, al dificultarse la prueba de los cargos más allá de duda razonable. Pueblo v. García Vega, *supra*, pág. 607.

derecho; y (4) el perjuicio resultante de la tardanza. *Véanse* <u>Pueblo v. Custodio Colón</u>, *supra*; <u>Pueblo v. García Vega</u>, *supra*, pág. 610; <u>Pueblo v. García Colón I</u>, 182 DPR 129, 143 (2011); <u>Pueblo v. Carrión</u>, 159 DPR 633, 641 (2003); *véase*, además, E.L. Chiesa Aponte, <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos</u>, Tomo II, Ed. Forum, 1992, págs. 151-154.

**A.**

De lo anterior se colige con meridiana claridad que la jurisprudencia se ha encargado de atender principalmente el problema de las dilaciones excesivas, injustificadas e irrazonables del Estado en presentar cargos criminales –atendido por el derecho al debido proceso de ley- y el problema de las demoras indebidas durante las etapas del juicio –atendido particularmente por el derecho a un juicio rápido-. Ello significa que no hemos abordado el asunto de las dilaciones excesivas, injustificadas e irrazonables del Estado en la fase de ejecución de las sentencias penales. Un examen de la normativa aplicable a la esfera penal, revela que no existe un precepto jurisprudencial o legislativo que expresamente fije el término prudencial que debe existir entre la emisión de una sentencia penal y su ejecución. En ese sentido, tampoco hemos resuelto si el Estado tiene un poder irrestricto que le permite ejecutar una sentencia penal en un tiempo indeterminado o si, en cambio, existen protecciones que le asisten a los ciudadanos contra la dilación excesiva, injustificada e irrazonable en la ejecución de las sentencias penales.

La Regla 175 de Procedimiento Criminal, 34 LPRA Ap. II, R. 175, se limita a disponer que una vez se dicte sentencia, "se entregará inmediatamente al funcionario que deba ejecutarla una copia certificada de la misma, la cual será suficiente para su ejecución, sin que fuere necesaria ninguna otra orden o autorización para justificar o pedir tal ejecución". Por su parte, lo único que hemos encontrado en las normas penales con relación a cuándo debe comenzar la ejecución de la pena impuesta es lo establecido en el Art. 70 del Código Penal vigente, el cual abarca, más bien, el modo de diferir la ejecución de la pena en tres instancias, a saber: (1) cuando el convicto se encuentre gravemente enfermo, certificada su condición por prueba médica;[4] (2) cuando se trate de una mujer en estado de embarazo o no hubiesen transcurrido 6 meses desde el alumbramiento; o (3) cuando otras circunstancias lo justifiquen por un plazo no mayor de 10 días. 33 LPRA sec. 5103.

Ahora bien, lo enmarcado tanto en la precitada Regla 175 como en el Art. 70 del Código Penal, aunque arroja cierta luz, no despeja ni aclara todas las interrogantes que presenta la controversia que tenemos ante nuestra consideración. Las referidas normas resultan insuficientes para atender aspectos medulares de la fase de ejecución de

---

[4]Inclusive, el Art. 70 del Código Penal vigente contempla la posibilidad de dejar sin efecto la sentencia dictada cuando han transcurrido 10 años naturales en los cuales el convicto se halle gravemente enfermo y así lo certifique. 33 LPRA sec. 5103.

sentencias penales. Específicamente, en cuanto a determinar si el Estado tiene un poder ilimitado de tiempo para ejecutar sentencias penales.

Ante ello, el vacío jurídico que existe en nuestro ordenamiento penal en cuanto a estos asuntos, exigía reconocer el remedio judicial solicitado y pautar, tal como lo hemos hecho en otras etapas, unos criterios que permitan evaluar la *razonabilidad* que debe existir entre el tiempo en que se dicta una sentencia penal y su ejecución. Ello permitirá sopesar las razones que tuvo el Estado para la dilación en ejecutar una sentencia penal y las salvaguardas que le asisten a los ciudadanos en esa etapa del proceso penal. Sin duda, la pronta solución de esta laguna jurídica no solo es de interés exclusivo del peticionario, sino del Estado, la comunidad jurídica y la sociedad en general. Veamos.

**III**

En su acepción jurídica, la etapa de ejecución se concibe como el conjunto de actos protagonizados por los organismos del Estado encaminados a materializar y hacer cumplir los pronunciamientos adoptados en una sentencia. F.D. Olivares Grullón y otros, Constitucionalización del proceso penal, República Dominicana, Ed. Corripio, 2002, pág. 407. En otras palabras, la ejecución es el trámite procesal que consiste en el cumplimiento de lo ordenado en una sentencia. Gran Diccionario Jurídico de Vecchi, Barcelona, Ed. Vecchi, 1991, pág. 150. Consecuentemente, en el ámbito penal la ejecución se refiere a la actividad

procesal desplegada por el Estado dirigida a hacer cumplir los pronunciamientos contenidos en una sentencia penal. Olivares Grullón y otros, *op. cit.* En esencia, es el momento *procesal* en que recaída una sentencia penal, se procede a hacer efectivo lo ordenado por ésta.

Cabe señalar que en otras jurisdicciones existe un debate filosófico entre varias corrientes o teorías en cuanto a la naturaleza de la ejecución penal, particularmente lo concerniente a la ejecución de las penas privativas de libertad. De esta forma, existe un sector doctrinal que plantea que la naturaleza de la ejecución penal es puramente de índole administrativa. Es decir, sostienen que una sentencia penal constituye el punto final del proceso penal y, por ende, el inicio de una actividad enteramente administrativa. Esto, claro está, sin perjuicio de la intervención judicial en incidentes puntuales. Olivares Grullón y otros, *op. cit.*

Para un segundo sector, la ejecución penal constituye una actividad procesal. Así, argumentan que el proceso penal no concluye en el momento en que se dicta la sentencia, sino que continúa hasta la extinción de la pena. En ese sentido, la ejecución tiene una inequívoca naturaleza procesal. Olivares Grullón y otros, *op. cit.*

Por su parte, existe una tercera corriente que afirma la naturaleza mixta de la ejecución penal. Esto es, concibe la etapa de ejecución penal en dos fases diferenciables, a saber: ejecución y cumplimiento. Para este sector, la ejecución es tarea que le compete a los foros judiciales.

En cambio, sostienen que el aspecto del cumplimiento de las penas privativas de libertad le corresponde al ente administrativo. Olivares Grullón y otros, *op. cit.*, págs. 407-408.

Expuesto el esquema doctrinal, resalta el hecho de que en nuestro ordenamiento jurídico no hemos adoptado ninguna de las teorías sobre la naturaleza de la ejecución penal. En ese sentido, no existe un pronunciamiento jurisprudencial o legislativo que afirme cuál es la naturaleza de la ejecución penal en nuestra jurisdicción. Y es que nuestra realidad constitucional lo hace innecesario, por contener unas garantías expresas aplicables en cualquiera de esas tres visiones de la ejecución en el proceso penal, lo que nos permite resolver la controversia ante nos. Veamos cuáles son esas salvaguardas constitucionales.

**A.**

Conforme adelantáramos, la Constitución de Puerto Rico reconoce expresamente en su Carta de Derechos que "[n]inguna persona será privada de su libertad o propiedad sin [el] debido proceso de ley". Art. II, Sec. 7, Const. ELA, Tomo 1, ed. 2008, pág. 296. Igual protección hallamos en la Carta Magna de los Estados Unidos. *Véase* Emda. XIV, Const. EEUU, LPRA, Tomo 1, ed. 2008, pág. 206. En esencia, para que se active esta cláusula constitucional en su vertiente procesal, tiene que existir un interés individual de libertad o propiedad. Una vez se identifica que la persona cumple con la exigencia de un interés libertario o

propietario, y que ese interés está amenazado por una intervención del Estado, procede determinar cuál es el procedimiento exigido.[5] Pueblo v. Villafañe Marcano, 183 DPR 50, 71 (2011); Pueblo v. Esquilín Maldonado, *supra*, pág. 262. Aunque la característica primordial es que el procedimiento debe ser justo, se han establecido componentes básicos del debido proceso, a saber: (1) notificación adecuada; (2) oportunidad de ser oído; y (3) derecho a defenderse. Pueblo v. Villafañe Marcano, *supra*, pág. 71; Pueblo v. Esquilín Maldonado, *supra*, pág. 262.

En consecuencia, la cobertura del derecho constitucional al debido proceso de ley es *amplísima*. D. Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 10ma ed., Instituto para el Desarrollo del Derecho, Inc., 2014, pág. 258. Según explica el profesor Chiesa Aponte, esta cláusula es fundamental y en la zona procesal penal permite la más variada gama de planteamientos. *Véase* E.L. Chiesa Aponte, *Los derechos de los acusados y la factura más ancha*, 65 Rev. Jur. UPR 83 (1996). Esas garantías del debido proceso de ley permean todas las etapas del procedimiento penal. Es decir, la

---

[5] En cuanto a este asunto, el Tribunal Supremo de los Estados Unidos resolvió hace décadas que el proceso requerido para cumplir con las garantías del debido proceso de ley es una interrogante constitucional que debe ser respondida primariamente por los tribunales. *Véase* Cleveland Bd. of Educ. v. Loudermill, 470 US 532 (1985); *véase*, además, E. Chemerinsky, Constitutional Law: Principles and Policies, 2d. ed., Aspen Publishers, 2002, sec. 7.4.

etapa de investigación, procesamiento, sentencia y ejecución de la misma.

En cuanto al particular, en Pueblo v. Moreno González, 115 DPR 298, 301 (1984), este Tribunal tuvo ocasión para expresar lo que debe comprender el debido proceso de ley en el ámbito criminal. A esos efectos, se determinó que ese derecho constitucional le impone al Estado el deber de aplicar las normas penales a los ciudadanos con rigurosa justicia y precisión, de manera que se minimicen los riesgos de penalizar a un inocente, *se proteja a las personas del poder abusivo por parte del Estado* y se genere una atmósfera de justicia imparcial. Íd. Es por ello que, indiscutiblemente, se requiere una compleja red de requisitos procesales que ordenen el proceso de investigación, adjudicación y **ejecución** de un caso penal. Íd.; véase, además, Nevares-Muñiz, *op. cit.*, págs. 258-259. En esta última etapa, no podemos relegar la realidad de que en nuestro ordenamiento jurídico la ejecución de la sentencia es de suma importancia, ya que ésta es el medio que se utiliza para proveer la oportunidad de reinserción y de rehabilitación moral y social a la persona que incurra en delito. Art. VI, Sec. 19, Const. ELA, Tomo 1, ed. 2008, pág. 440.

**B.**

Cónsono con lo anterior, opino que una dilación excesiva, injustificada e irrazonable por parte del Estado en la ejecución de una sentencia penal *vulnera el debido proceso de ley en su vertiente procesal*. El derecho a un

proceso sin dilaciones excesivas, injustificadas e irrazonables es de aplicación y necesaria observancia en todo tipo de proceso o etapa. No puede ser de otro modo. Ello, pues, los ciudadanos no pueden quedar desvalidos y sin protección ante la dilación excesiva, injustificada e irrazonable del Estado en ejecutar una sentencia penal. Sin duda, es evidente que el Estado tiene que ser diligente en la tramitación de la ejecución de una sentencia penal por imperativo del debido proceso de ley.

Claro está, existirán ocasiones en que la dilación se deba a causas no atribuibles al Estado, o que sea una justificada y razonable. Sin embargo, no reconocer expresamente y pautar la existencia de garantías fundamentales en la etapa de ejecución de sentencias penales provocaría un indeseable limbo jurídico para los ciudadanos que se encuentran en esa fase del proceso penal. Peor aún, podría resultar en un mecanismo silente del Estado para ejercer un poder abusivo contra las personas convictas de delito. Lamentablemente, hoy se adopta un curso contrario a evitar las dilaciones excesivas, injustificadas e irrazonables en el trámite del proceso penal, incluida la etapa de ejecución de la sentencia.

Expuesto lo anterior, resultaba necesario pautar qué criterios deben aplicar ante un planteamiento de que el Estado infringió su garantía constitucional a un debido proceso de ley por motivo de la dilación excesiva, injustificada e irrazonable en la fase de ejecución de una

sentencia penal.[6] En cuanto a ello, considero que estos casos conllevan un análisis de varios factores en aras de que el foro judicial pueda dictaminar si la dilación del Estado en ejecutar la sentencia ha sido excesiva, injustificada y sobrepasa los parámetros de lo razonable, por lo que vulnera el derecho a un debido proceso de ley. Así pues, los siguientes criterios servirían de guía a los tribunales: (1) la duración de la dilación en la ejecución de la sentencia penal; (2) las razones para la dilación;

---

[6]Como es sabido, cualquier persona que se encuentre detenida en virtud de una sentencia penal y alegue el derecho a ser puesta en libertad, puede presentar una moción al amparo de la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, R. 192.1, ante el tribunal sentenciador en cualquier momento después de dictada la sentencia, incluso cuando ya la misma es final y firme. Para ello, se pueden invocar los siguientes fundamentos: (1) la sentencia fue impuesta en violación de derechos constitucionales o leyes tanto estatales como federales; (2) falta de jurisdicción del tribunal para imponer la sentencia; (3) la sentencia excede de la pena dispuesta en ley; o (4) **la sentencia está sujeta a ataque colateral por cualquier motivo**. Íd. A menos que la moción y los autos del caso demuestren que la persona no tiene remedio alguno, el tribunal señalará una vista para dilucidar la moción, se asegurará de que el peticionario ha incluido todos los fundamentos para solicitar el remedio, fijará fianza en los casos apropiados y formulará determinaciones de hecho y conclusiones de derecho respecto a la misma. Íd. Si el foro judicial determina que se cumple con alguno de los fundamentos mencionados, la referida regla procesal dispone que existen varios cursos de acción a seguir, a saber: (1) dejar sin efecto la sentencia y excarcelar a la persona; (2) dictar una nueva sentencia; u (3) ordenar un nuevo juicio. Íd.; *véase*, además, D. Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 10ma ed., Instituto para el Desarrollo del Derecho, Inc., 2014, pág. 232.

En virtud de lo anterior, una moción bajo el inciso (4) de la citada Regla 192.1 es uno de los recursos procesales adecuados para alegar una violación al debido proceso de ley por motivo de la dilación excesiva, injustificada e irrazonable del Estado en ejecutar una sentencia penal.

(3) el perjuicio resultante de la dilación; (4) la conducta y accesibilidad del peticionario luego de dictada la sentencia penal; (5) los efectos en la rehabilitación del peticionario;[7] (6) el proceder de las autoridades pertinentes luego de dictada la sentencia penal; y (7) la complejidad del caso.[8]

Los referidos criterios permitirían que el foro judicial pueda crear un *balance* entre los intereses apremiantes del Estado y las garantías fundamentales que cobijan a los ciudadanos en la fase de ejecución de la sentencia penal. A manera de aclaración a la norma planteada, advertiría que la vulneración al debido proceso de ley conlleva el análisis de *todos* los criterios señalados. Ninguno de los factores debe ser decisivo, de suyo. Por ende, considero que la alegación de violación al debido proceso de ley en estos casos no puede adherirse a

---

[7]Recordemos que en nuestro ordenamiento jurídico la imposición de las penas tendrá como objetivos generales los siguientes: (1) la protección de la sociedad; (2) la justicia a las víctimas de delito; (3) la prevención de delitos; (4) el castigo justo al autor de delito en proporción a la gravedad del delito y a su responsabilidad; y (5) la rehabilitación social y moral del convicto. 33 LPRA sec. 5011; Art. VI, Sec. 19, Const. ELA, Tomo 1, ed. 2008, pág. 440.

[8]Es menester señalar que estos criterios han sido reconocidos por otras jurisdicciones como aspectos primordiales para evaluar el carácter razonable de un procedimiento penal, desde la tramitación de la causa hasta la ejecución de la sentencia. *Véase* E. Ruiz Vadillo, *Algunas breves consideraciones sobre las dilaciones indebidas en el proceso penal español*, disponible en http://www.mjusticia.gob.es/cs/Satellite/Portal/1292344071 899?blobheader=application%2Fpdf&blobheadername1=Content-Disposition&blobheadername2=EstudioDoctrinal&blobheaderval ue1=attachment%3B+filename%3D1993_1690.pdf&blobheadervalue 2=1288777801869.

medidas de calendario o descansar en una regla inflexible basada en un simple cómputo matemático, sino que el enfoque es pragmático y responde a la naturaleza inherente que emana de la protección constitucional a un debido proceso de ley en su vertiente procesal.

Expuesto el marco jurídico aplicable, y disipadas las cuestiones de umbral, procedo a aplicarlo a la controversia ante nos.

**IV**

Según indicado, surge de este caso que por motivo de unos hechos ocurridos en el 1996, el señor Crespo Cumba fue acusado por dos infracciones al Código Penal. Visto el caso, éste fue sentenciado el 8 de julio de 1997 a cumplir 6 meses de reclusión consecutivos por cada uno de los delitos, para un total de 1 año. Cumplidos los trámites de rigor, la sentencia del señor Crespo Cumba fue suspendida bajo el régimen de libertad a prueba. No obstante, éste incumplió con las condiciones, lo que motivó que el Ministerio Público solicitara la revocación de su probatoria. Así las cosas, y luego de varios incidentes procesales, el **14 de enero de 1999**, el foro de instancia revocó la libertad a prueba del peticionario y ordenó su arresto inmediato y detención hasta que cumpliese la pena de 1 año de reclusión. Luego de transcurridos 16 años de emitida la orden de arresto, ésta fue diligenciada el **16 de junio de 2015**.

Ante ello, el señor Crespo Cumba presentó una moción al amparo de la Regla 192.1 de las de Procedimiento

Criminal. En esencia, arguyó que no podía justificarse la dilación del Estado en dar cumplimiento a la sentencia impuesta. Expresó que debido al extenso tiempo transcurrido desde dictada la Sentencia y a que siempre ha estado accesible dentro de la jurisdicción, se debía dar por cumplida la pena impuesta, o en la alternativa, modificarla. Evaluada la moción presentada por el peticionario, el foro primario la declaró no ha lugar. Ello, sin la celebración de una vista al respecto.

Inconforme, el señor Crespo Cumba recurrió ante el Tribunal de Apelaciones. En síntesis, argumentó que la ejecución de una sentencia emitida hace 16 años era ilegal y contraria a las garantías constitucionales. Arguyó que medió incuria por parte del Estado al ejecutar una sentencia luego de 16 años de que fuera emitida. Del mismo modo, sostuvo que por el tiempo transcurrido procedía dar por cumplida la pena impuesta, o en la alternativa, modificarla. A su vez, alegó que procedía la celebración de una vista evidenciaria para evaluar los méritos la moción presentada al amparo de la Regla 192.1 de Procedimiento Criminal. Examinados los argumentos del peticionario, el foro apelativo intermedio denegó la expedición del recurso.

En desacuerdo, el peticionario acudió ante este Tribunal. Ante nos, si bien no cuestiona la legalidad de la Sentencia dictada en el 1999, argumenta que la dilación en su ejecución no propicia su rehabilitación social y moral. Arguye que por ser de una situación excepcional, en

la que ha mediado incuria y desidia por parte del Estado, se debe dar por cumplida la pena de reclusión impuesta, o en cambio, modificarla. Del mismo modo, alega que el Estado ha tenido amplia oportunidad de ejecutar la sentencia emitida en el 1999 -ya que ha estado accesible en la jurisdicción- por lo que la demora innecesaria e irrazonable le ha causado un perjuicio patente y extraordinario en detrimento de su rehabilitación y derechos. A su vez, plantea que no se justifica la inacción y dilación injustificada del Estado en ejecutar una sentencia dictada hace 16 años. Por tanto, nos solicita la revocación de la determinación del Tribunal de Apelaciones y su excarcelación.

Examinado el expediente del caso, concluyo que los foros recurridos incidieron al denegar, sin más, los reclamos incoados por el señor Crespo Cumba. Asimismo, considero que éstos actuaron de forma improcedente al dejar entrever que las alegaciones del peticionario no tenían cabida en nuestro ordenamiento jurídico. A lo sumo, ante los reclamos esgrimidos por el señor Crespo Cumba, los foros recurridos debieron ordenar la celebración de una vista. Así las cosas, no puedo imprimirle un sello de corrección al razonamiento de los foros recurridos.

**V**

En consecuencia, revocaría el dictamen emitido por el Tribunal de Apelaciones y devolvería el caso al foro primario para que, en un término perentorio, celebre una vista, en la cual se diluciden los reclamos del señor

Crespo Cumba a la luz de los criterios expuestos en este Voto Particular. Ello, en aras de atender los méritos de los reclamos esgrimidos por éste y aquellos argumentos que a bien tenga a plantear el Estado. Una vez celebrada la correspondiente vista, el foro primario estaría en mejor posición de adjudicar si la dilación del Estado en ejecutar la sentencia penal del peticionario infringió las garantías constitucionales aquí discutidas.


                                        Luis F. Estrella Martínez
                                             Juez Asociado